STATE, Respondent, v. KILLORY, Appellant.

*No. 75–47–CR.  Argued June 2, 1976.—Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 475.)

For the appellant there was a brief by *Robert H. Friebert, Thomas W. St. John* and *Samson, Friebert, Finerty & Burns,* all of Milwaukee, and oral argument by *Robert H. Friebert.*

For the respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Frank T. Crivello,* assistant district attorney of Milwaukee county.

CONNOR T. HANSEN, J. The defendant has obtained a doctorate degree in counseling psychology. At the time of the events giving rise to this charge, he was employed as a professor of psychology at a college. In the early fall of 1973, he and his family, consisting of his wife and one daughter, took into their home the defendant's niece, Judy, born December 21, 1957, pursuant to an agreement with defendant's sister, who is Judy's mother, and the sister's estranged husband, who is Judy's father. Judy was considered a behavior problem by her parents. Her behavior was discussed with the defendant, who diagnosed her as a "psychopath" and indicated that he could help her with her problems through a treatment method involving reward and punishment. There is a dispute as to whether the child's parents were informed of the exact nature of the punishment which would be imposed. Judy's mother and father brought her to the defendant's home to live on September 11, 1973. Several days prior

to this, the defendant had visited the school which Judy would attend while living with him and had informed the guidance counselor that his niece was a psychopath and that he would be treating her by means of corporal punishment.

Judy remained in defendant's home from September 11, 1973, until September 28, 1973. When she arrived, she was given a set of rules to follow and punishment for breaking the rules was explained. During the subsequent period of approximately two and one-half weeks, she received punishment on six separate occasions.

The punishment consisted of whippings and enemas. The whippings were administered with several different types of instruments. These consisted of three paddles of various sizes and weights, a whip-like instrument constructed from a broom handle with leather strands studded with hardened balls of a glue-type substance, a second whip-like instrument with leather strands, and a leather belt with a brass buckle on it.

On September 11th, defendant struck the victim with each instrument in order to demonstrate to her what punishment she would receive when she violated a prescribed rule. She was struck with the whip-like instruments and the belt on the rear and thighs while holding onto a bench in front of her in a standing position, legs apart, head down, completely naked. She was struck with the paddles while lying naked across the defendant's lap. The victim was struck on that day a total of 47 times. She remembered the exact number of times because she was required to count out each stroke.

On the following day, the victim left a note informing defendant that she was going to the lake but went instead to the store. For this, she was punished under the same conditions described above by being struck on the rear and thighs a total of 37 times with the whip-like instrument studded with the balls of glue-type substance.

On September 16th, two enemas, consisting of four quarts of salted water, which the victim was required to mix, were administered for the purpose of demonstration. She was struck with a wire with a solder ball on the end of it when she was unable to hold the second enema.

On three subsequent occasions, the victim received punishments similar in condition and severity to those described above. As a result of these punishments, the victim had bruises evident on her legs which alarmed members of the high school staff. Her father was contacted by the school principal, custody was transferred by telephone to the principal, and Judy was removed from defendant's home.

The following issues were presented to the circuit court on appeal and raised again on this appeal:

1. Is sec. 940.201, Stats., unconstitutionally vague or overbroad?

2. Did the circuit court err in determining that the trial court did not abuse its discretion in sentencing defendant?

The following issues were not presented to the circuit court on appeal, but are presented for the first time on this appeal. In this particular case, and for reasons hereinafter stated, we address them:

4. Did the trial court err in overruling defendant's motion to dismiss?

5. Was there error in jury instruction?

6. Was there sufficient evidence to support the jury verdict?

7. Were certain of the state's exhibits the result of an unlawful search and seizure?

*Vagueness and overbreadth.*

Sec. 940.201, Stats., provides:

". . . Whoever tortures or subjects to cruel maltreatment any child may be fined not more than $500 or im-

prisoned not more than one year in county jail or both. In this section, 'child' means a person under 16 years of age."

Defendant challenges the constitutionality of the statute on the ground that the term "cruel maltreatment" is too vague to give reasonable notice of proscribed conduct. The circuit court determined that the statute is not unconstitutionally vague. This conclusion was not in error.

A most recent discussion by this court of the issue of statutory vagueness was undertaken in *Butala v. State* (1976), 71 Wis. 2d 569, 239 N. W. 2d 32, wherein it was stated at pages 573, 574, that:

"An allegation that a statute is vague is based upon the procedural due process requirement of fair notice. The primary issue raised by such a challenge is whether the statute taken as a whole is sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise the judge and jury of standards for the determination of guilt. *State v. Zwicker* (1969), 41 Wis. 2d 497, 507, 164 N. W. 2d 512, states:

" ' " . . . If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional." ' "

However, a statute need not be so specific as to delineate each and every mode of conduct embraced by its terms:

" 'A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more

than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.' " *State v. Alfonsi* (1967), 33 Wis. 2d 469, 480, 147 N. W. 2d 550, citing from *Boyce Motor Lines v. United States* (1952), 342 U. S. 337, 340, 72 Sup. Ct. 329, 96 L. Ed. 367.

*See also: State v. Zwicker* (1969), 41 Wis. 2d 497, 506, 164 N. W. 2d 512.

In *State v. Samter* (1971), 4 Or. App. 349, 479 Pac. 2d 237, 238, the court upheld the constitutionality of the following statute:

" 'Any person, not being a parent of the child, who knowingly and wilfully *cruelly mistreats and maltreats* a child under the age of 16 years, shall be punished. . .' (Emphasis ours.) "

In the course of its opinion, the court addressed the meaning of the term "cruel mistreatment and maltreatment," pages 239, 240:

"The words 'mistreat' and 'maltreat' are synonymous. They mean to treat badly or to abuse another. In the statute under consideration, these words are modified by the word 'cruelly,' which means to cause pain or hurt. These are all words of general or common usage and about which there is no great dispute as to meaning. It may be that in every instance not all persons would agree whether certain specified conduct was sufficiently beyond the normal to constitute cruel mistreatment. However, there would be no misunderstanding of the nature of the yardstick being applied.

" . . .

" 'Cruel mistreatment' is no less definite than many other terms, such as 'negligent' and 'threaten,' which are commonly used in our criminal statutes to describe prohibited conduct. There is little dispute as to the general kind of conduct prohibited, but there can be legitimate controversy concerning whether particular acts are aggravated enough to fall within the prohibition."

■ We find the reasoning therein persuasive with respect to the vagueness challenge to sec. 940.201, Stats. The terms utilized in the statute are sufficiently definite in meaning, in accordance with their common usage and understanding, to meet constitutional standards. *Butala v. State, supra; State v. Driscoll* (1972), 53 Wis. 2d 699, 703, 193 N. W. 2d 851.

Defendant also contends that the statute is unconstitutionally overbroad in that it infringes upon the parental rights to choose methods of child discipline.

■■ In *State v. Driscoll, supra,* pages 701, 703, 704, the test for overbreadth was stated in the following terms:

". . . The test of overbreadth is whether the language of the section is so broad as to discourage conduct expressly protected by the constitution, *i.e.,* conduct the state has no right to prohibit. . .

". . .

". . . The normal and reasonable meaning of the language must be found so broad that its sanctions apply to constitutionally protected conduct which the state is not entitled to regulate before a statute can be faulted for overbreadth. *State v. Starks* (1971), 51 Wis. 2d 256, 259, 260 185 N. W. 2d 245."

Under this test, sec. 940.201, Stats., is not overly broad. The state has the right to enact reasonable legislation to protect the safety and well-being of minors. The language used in the statute connotes conduct which is abhorrent to the sensitivities of the general public. It is not language which would embrace conduct that reasonable persons would consider appropriate methods of child discipline. The statute, therefore, is not overly broad.

*Sentencing.*

Sec. 940.201, Stats., *supra,* provides a maximum penalty of incarceration for one year. Defendant was sen-

tenced to an indeterminate term not to exceed nine months. Sentence was stayed pending this appeal. Defendant argues that the sentence imposed was excessive and an abuse of discretion in light of the particular circumstances of this case.

█ Review of sentences challenged as an abuse of discretion must be made in light of the strong policy against interference with the trial court's discretion in passing sentence. There is a presumption that the trial court acted reasonably and the defendant must show some unreasonable or unjustifiable basis in the record for the sentence complained of. An abuse of discretion will be found only:

". . . where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. . . ." *Ocanas v. State* (1975), 70 Wis. 2d 179, 183, 184, 185, 233 N. W. 2d 457.

In *State v. Tew* (1972), 54 Wis. 2d 361, 367, 368, 195 N. W. 2d 615, this court reviewed some of the factors which are relevant to a sentencing determination. These include the defendant's personality, character and social traits, the results of a presentence investigation, the vicious or aggravated nature of the crime, the degree of defendant's culpability, the defendant's demeanor at trial, the defendant's age, educational background and employment record, the defendant's remorse, repentance and cooperativeness, the defendant's need for close rehabilitative control, and the rights of the public.

In accordance with this court's mandate in *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512, the trial court undertook an extensive discussion for the record of the factors considered and the reasons for the sentence imposed herein. He carefully reviewed the presentence report, pointing out that three general observa-

tions were common throughout the various interviews. These conclusions were that defendant was not mentally ill, had used poor professional judgment and showed no remorse for his actions. The trial court emphasized defendant's educational background, the seriousness of the crime, defendant's degree of culpability, and the rights of the public. He was of the opinion that a sentence less than total confinement would unduly deprecate the seriousness of the offense. The circuit court carefully reviewed the trial court's determination and the reasons therefor, finding that the sentence had been appropriately rendered.

Although the presentence report did not recommend total incarceration, such report is not binding on the sentencing court, *Ocanas v. State, supra,* p. 188.

In view of the nature of the offense and the relevant factors considered by the trial court, the circuit court made no error in concluding that the trial court had not abused its sentencing discretion. The defendant has shown no unreasonable or unjustifiable basis in the record for the sentence. *Ocanas v. State, supra.*

Before proceeding to consider the issues raised for the first time on this appeal, we deem it appropriate to make some observations in regard to appellate practice under sec. 974.01, Stats., **Misdemeanor appeals from county court.**

The state has filed with this court a motion to strike certain portions of the defendant's brief concerning issues not presented to the circuit court on appeal. The decision on the motion was reserved until consideration of the case on its merits. On appeal to the circuit court, the defendant presented only the questions of statutory constitutionality and sentencing. On these issues, the circuit court affirmed the trial court. The defendant now seeks to have this court review questions relating to trial court denial of a motion to dismiss, jury instruc-

tions, admissibility of certain evidentiary items, and the sufficiency of evidence, none of which were presented to the circuit court for consideration. The motion of the state to strike portions of the defendant's brief is directed to these four issues. In this particular case, the motion to strike is denied. Henceforth, however, such a motion will be granted unless in a proper case and for reasons of judicial administration and policy it is necessary to consider new issues raised for the first time on appeal to this court. The failure to raise issues in circuit court on misdemeanor appeals from county court constitutes a waiver of a right to review those issues on appeal to this court.

In *Terpstra v. Soiltest, Inc.* (1974), 63 Wis. 2d 585, 593, 218 N. W. 2d 129, it was held:

". . . The practice of this court is not to consider an issue raised for the first time on appeal.

". . .

"It is true that we may in a proper case consider new issues for the first time on appeal. The question is one of judicial administration and policy, and not one of power. . . ."

The defendant was convicted of a misdemeanor in the county court of Milwaukee county. The defendant appealed to the circuit court, as provided by sec. 974.01, Stats., from the judgment of conviction and sentence. The appeal to this court is from the order of the circuit court affirming the judgment of the county court. It is not an appeal from the judgment of conviction and sentence of the county court.

Sec. 253.12, Stats., vests the county courts and circuit courts with concurrent jurisdiction of all criminal matters except treason ". . . except that in any county having a population of 500,000 or more the county court shall have jurisdiction to hear, try and determine all charges for misdemeanors arising within the county.

. . ." Thus, in Milwaukee county, the county court has exclusive jurisdiction over misdemeanor violations. *State ex rel. Sachtjen v. Festge* (1964), 25 Wis. 2d 128, 146, 130 N. W. 2d 457.

Sec. 974.01, Stats., provides that appeals in misdemeanor cases tried in county court shall be to the circuit court. This procedure is exclusive. *Harms v. State* (1967), 36 Wis. 2d 282, 287, 153 N. W. 2d 78. On appeal to the circuit court, it has the power to affirm, reverse or modify the judgment appealed from, and in addition, it may order a new trial in whole or in part, which shall be in circuit court. Sec. 974.01 (6). Prior to the amendment in 1969,[1] the statute also provided for a trial *de novo* on appeal to the circuit court. This option is no longer available.

Several considerations are pertinent to our decision that there is no review as a matter of right before this court of issues not presented to the circuit court on appeal of misdemeanor cases tried in county court. The appeal from circuit court to this court is a procedural right established by statute, sec. 974.03, as is the appeal from county court to circuit court, sec. 974.01.

██ This court has recognized that one of the reasons for directing appeal of misdemeanors to the circuit court is to provide for economic and orderly administration of justice. *Harms v. State, supra,* p. 286. The effectiveness of such procedure is severely hampered by failure to present all issues to the circuit court. The failure to so present all issues to the circuit court would relegate such an appeal to merely a "holding action" and render it a meaningless judicial procedure. In the instant case, there were no postconviction motions or motion for a new trial. On appeal to the circuit court, there was no formal assignment error. The issues raised, briefed and argued in circuit court related only to the constitutionality of the statute and the sentence imposed. It was

[1] Ch. 255, sec. 63, Laws of 1969.

on these issues that the circuit court based its decision. On appeal to this court the defendant has no right to present issues for the first time which were never presented on appeal to the circuit court. Failure to present alleged errors to the circuit court on review deprives this court of the benefit of the reviewing court's opinion and conclusions on those issues. *Terpstra v. Soiltest, Inc., supra.*

This decision conforms to the decisions of this court in *State v. Chacon* (1971), 50 Wis. 2d 73, 183 N. W. 2d 84, and *Madison v. Geier* (1965), 27 Wis. 2d 687, 135 N. W. 2d 761.[2] Those cases stand for the proposition that issues properly preserved on the circuit court appeal are subject to the same scope of review on appeal to this court as they were on appeal to the circuit court.[3]

In view of our decision in response to the state's motion to strike portions of the defendant's brief, and as a matter of judicial administration and policy, in this case we opt to consider the four issues raised for the first time on this appeal.

### Motion to dismiss.

At the conclusion of the state's case, defendant moved for dismissal on the ground that the state had failed to meet its burden of proof. The trial court denied the motion and directed the defense to proceed, finding that the state had made out a *prima facie* case.

Defendant was convicted of cruel maltreatment of a child under the age of sixteen. In his instructions to the jury, the trial court defined cruelty as the "intentional and malicious infliction of physical suffering upon human

[2] *State v. Maker* (1970), 48 Wis. 2d 612, 180 N. W. 2d 707, was a trial *de novo* case in the circuit court under the statute as it then existed.

[3] *See also: Milwaukee v. Antczak* (1964), 24 Wis. 2d 480, 129 N. W. 2d 125.

beings." Defendant argues that the state failed to show the presence of malice in defendant's conduct. He urges that the trial court's refusal to dismiss was, therefore, error. We do not agree with this assertion.

■ ■ Section 940.201, Stats., *supra,* makes no mention of the term "malice." The question, then, is whether the term "cruel" imports into the statute a requirement that malice must be shown. In our consideration of the constitutional issues, it was determined that the words "cruel maltreatment" are common words, of general usage. In addition, it is a well-recognized rule of statutory construction that nontechnical words and phrases are to be construed in accordance with their common and ordinary usage. *State ex rel. B'nai B'rith F. v. Walworth County* (1973), 59 Wis. 2d 296, 307, 208 N. W. 2d 113. The ordinary and common meaning of a word may be established by definition of a recognized dictionary, *Edelman v. State* (1974), 62 Wis. 2d 613, 620, 215 N. W. 2d 386. The word "cruel" modifies the word "maltreatment," rather than describing the perpetrator of the crime. Webster's, *New International Dictionary* (3d ed. unabridged), defines cruel as "bitterly conducted: devoid of mildness: causing or conducive to injury, grief, or pain . . . extremely painful." The Random House, *Dictionary of the English Language* (unabridged ed. 1966), gives the following definition: "causing or marked by great pain or distress." Thus, the modification of the proscribed conduct identified by the noun "maltreatment," by the adjective "cruel" does not import "malice" into the statute as a required element of the crime. Therefore, the trial court made no error in denying defendant's motion to dismiss.

*Jury instruction.*

Defendant contends that the jury instructions were inadequate. This argument is based in the court's use

of the term "malicious" to define the word "cruel" and subsequent failure to explain the meaning of the word "malicious." However, as we have stated, a showing of actual malice is not necessary for conviction under this statute. The use of the word "malicious," without accompanying definition, actually enlarged the standard of proof for conviction beyond that required by statute. Thus, defendant cannot be heard to complain that any error based on this ground requires reversal.

Defendant also asserts that the trial court's definition of "maltreatment" would allow the jury to convict if it believed corporal punishment to be "unkind." However, in the instructions submitted to the jury the following definition was given:

". . . Maltreatment is defined as treating someone roughly, unkindly, and brutally, or to abuse them . . . ."

Therefore, defendant's challenge to the jury instructions is unfounded.

### Sufficiency of the evidence.

It is defendant's position that pursuit of a course of medical treatment in good faith is a complete defense to criminal conviction for the conduct charged herein. He, therefore, contends that the evidence presented was insufficient to support a guilty verdict because lack of good faith on defendant's part was not shown.

Defendant relies for his "good faith" proposition on certain language in *Bartell v. State* (1900), 106 Wis. 342, 82 N. W. 142. The defendant therein claimed to be a "magnetic healer." He was prosecuted for assault and battery for having required his young female patient to completely undress in order to receive a massage treatment for her malady. This court found no error in a jury instruction which stated that:

". . . if *Bartell* treated his patient in good faith, for the purpose of curing the disease with which she was supposed to be afflicted, and in good faith caused her to expose her body to his view for the purposes of such treatment, his conduct did not constitute the offense of assault and battery; . . . ." *Bartell v. State, supra,* page 345.

We conclude that such a statement does not rise to the level of granting psychologists in this state an immunity from criminal prosecution for conduct which is statutorily prohibited based on generalized assertions that the conduct was undertaken in "good faith." While testimony from qualified experts may have been relevant on the issue of whether the course of conduct engaged in was a recognized method of treatment, no such evidence was offered or presented herein, beyond defendant's own explanation of how he came to develop the procedure. Only in this sense could proof of alleged "good faith" become relevant in relation to the presumption of general criminal intent attendant upon unlawful acts. *State v. McCarter* (1967), 36 Wis. 2d 608, 612, 153 N. W. 2d 527.

In the instant case, no effort was made to elicit expert testimony supporting defendant's method of treatment. The testimony shows that defendant solicited no medical or psychiatric opinions on the efficacy of the treatment or the possible harmful effects. There is no question that he actually engaged in the activity giving rise to the prosecution. Under these circumstances, the evidence was sufficient to support the jury verdict. *State ex rel. Kanieski v. Gagnon* (1972), 54 Wis. 2d 108, 113, 194 N. W. 2d 808.

*Admissibility of exhibits.*

At trial, the instruments used to inflict the punishment upon the victim were introduced into evidence.

Before the trial, defendant moved to have the items suppressed. The motion was denied as to the items subsequently received in evidence. The defendant urges that refusal to grant the motion constitutes reversible error because the search warrant through which the items were obtained was tainted by a prior constitutionally improper search.

Certain additional facts are pertinent to a determination of this issue. On Friday, September 28, 1973, the victim was accompanied to defendant's home by two Milwaukee county child protective services' caseworkers. Their undisputed purpose in going to defendant's home was to pick up the defendant's clothing and other belongings. During the period in which they were on the premises, the victim requested that they look at the instruments and these items were subsequently shown to them in a hallway closet located adjacent to defendant's study.

On the following Monday, October 1, 1973, proceedings were conducted on a complaint for a search warrant. At that proceeding, one of the caseworkers described the nature of the items he had been asked to observe. A search warrant was issued and the instruments were removed from the home of the defendant.

In *Molina v. State* (1972), 53 Wis. 2d 662, 668, 193 N. W. 2d 874, it was stated:

". . . This court has defined a search as an examination of one's premises or person that '. . . implies exploratory investigation or quest,' and also, '. . . implies a prying into hidden places for that which is concealed.' . . ."

In *Mears v. State* (1971), 52 Wis. 2d 435, 190 N. W. 2d 184, it was determined that certain of the items sought to be suppressed had not been obtained as a result of a search by state officials. Rather, because an occupant of the house had called officers to the home and exhibited

the items to them, it was held that no search, in the constitutional sense, had taken place at all. *Mears v. State, supra,* pp. 443, 444.

Similarly, in the instant case, neither of the implications suggested by *Molina, supra,* were present. The caseworkers did not undertake an exploratory investigation or quest nor did they pry into hidden places for that which was concealed. Rather, the victim, an occupant of the house, exhibited to them the items subsequently seized pursuant to the warrant. *Mears v. State, supra.* Thus, the knowledge obtained by the caseworkers was not the result of a search. Therefore, the search warrant was not tainted by a constitutionally illegal search. The trial court made no error in denying the motion to suppress.

*By the Court.*—Order affirmed.