**NORTHWEST SOUTH DAKOTA PRODUCTION CREDIT ASSOCIATION, Plaintiff and Appellee,**

v.

**Byron DALE, a/k/a Byron C. Dale and Judie Dale, a/k/a Judith C. Dale, Defendants and Appellants,**

and

**Bradley R. Dale, a/k/a Brad Dale, a/k/a Bradley Dale; Louis L. Kellar, a/k/a Louie L. Kellar; the Federal Land Bank of Omaha; United States of America Acting Through the Farmers Home Administration of the United States Department of Agriculture; Edward Bader; Raymond Bader; Louis Bader; Promised Land Industries and Corson County, South Dakota, Defendants.**

Nos. 14198, 14222.

Supreme Court of South Dakota.

Considered on Briefs Oct. 22, 1984.

Decided Jan. 16, 1985.

Ronald R. Johnson of Johnson & Kelley, Lemmon, for plaintiff and appellee.

John N. Gridley III, Sioux Falls, and Rauleigh D. Robinson of Vogel Law Firm, Mandan, N.D., for defendants and appellants.

HENDERSON, Justice.

### ACTION

This is an appeal from a partial final summary judgment entered March 17, 1983, granting appellee Northwest South Dakota Production Credit Association (PCA) judgment for the balance due on appellants' Byron C. Dale's and Judith C. Dale's (Dales) loan and directing sale of the personal property security; and, also, an order entered ex parte on March 18, 1983, directing the previously appointed receiver to take physical possession of the personal property security as well as the sale of the livestock security. We affirm.

### FACTS/PROCEDURAL HISTORY

Dales financed their cattle production operation with PCA. PCA had a security interest in the cattle and any offspring. As part of the agreement, Dales were to account to PCA for the original herd, livestock purchased and the increase, with all proceeds going to PCA. Further, as part of the agreement, PCA had the right to enter Dales' premises at a reasonable time, to inspect its collateral. Specifically, inspection of collateral was not to be considered a trespass.

Dales obtained a new brand, without informing PCA, and proceeded to brand PCA-secured livestock with the undisclosed marking. The new brand was then transferred to a son, Brad, with a view of enabling Brad to sell the livestock free of the PCA lien.

In 1982, Byron Dale began studying the monetary system and arrived at a few solutions of his own. On October 5, 1982, Byron attempted to pay off the PCA loan with a note payable in hay and silage. Byron concluded that the value of hay was $1,980/ton when the market value at the time was $40/ton.

PCA rejected the purported payment and attempted to exercise its right to inspect the livestock. Notwithstanding an express provision to the contrary, entry was refused. Byron told PCA that before anyone took possession of the livestock, his blood would run on the place. It was later determined that son, Brad, had sold some of the livestock under the new brand. Further, it appears Byron had conveyed other cattle to a neighbor in payment of a silage cutting bill.

On October 18, 1982, PCA brought suit to enforce the right of inspection with an alternate cause for possession of the livestock should the inspection disclose an event of default as described in the agreement. An Order to Show Cause and Temporary Restraining Order were issued and on October 22, 1982, all process was served on Dales. At the scheduled hearing, the tendered defense by Dales was payment of the debt with the hay note. Inspection was thereupon ordered by the trial court.

Off the record, Dales agreed that the inspection would take place on Friday, October 29, 1982. An Order Granting Preliminary Injunction and Restraining Order and including specific reference to "all increase of such cattle" was served October 28,

1982, on Byron Dale. That same day, Byron called PCA and told them not to come out on Friday, October 29th as previously scheduled and agreed to inspection on November 3, 1982. On October 30, 1982, Byron called his neighbor, Louie Keller, and told him to get the calves off the place by November 2, 1982.

Inspection was completed, nevertheless, in the absence of Dales. There was a considerable shortage of livestock. Dales never disclosed disposition of the missing animals in any of their affidavits. An Amended and Supplemental Complaint then changed the action substantively to one for judgment for the debt and foreclosure sale of all security. An Order to Show Cause and Temporary Restraining Order served on November 9, 1982, specifically enjoined disposition of any calves branded with the new brand.

Pursuant to Order to Show Cause, a hearing was held December 8, 1982. At this hearing, Byron continued to take the position that he did not have to protect or account for the calves, that Brad could sell the calves, and that the order did not apply to the calves. Deeming it necessary under the circumstances, the court granted an application for appointment of a receiver.

There was an additional motion hearing on the tendered defense pertaining to the monetary system on January 6, 1983. On January 31, 1983, PCA moved for summary judgment and furnished detailed documentation in support of the application. On February 17, 1983, notice for instructions to receiver was issued. The sole response was based upon the monetary system with no denial of the basic facts.

On March 7, 1983, the court issued a Memorandum Opinion granting PCA summary judgment. On March 15, 1983, a threat from Posse Comitatus referring to the trial court's ruling was mailed directly to the trial court.

On March 13, 1983, the first Sunday following receipt by Dales of the Memorandum Opinion, the calves were ostensibly "rustled" from the Dale place. The Order for Partial Final Summary Judgment in favor of PCA, Dismissal of Counterclaim and Denial of Motion for Summary Judgment by Dales, together with Partial Final Summary Judgment entered March 17, 1983, were mailed to Dales prior to the disappearance of the calves. On March 16, 1983, the disappearance of the calves was reported to the trial court by the receiver on a regular motion day at McIntosh, South Dakota. An in-chambers discussion followed.

The court noted that Byron had caused widespread publicity of his positions in the suit and particularly noted the published news reports that he would fight foreclosure with his life. Further, the court noted that he publicly expressed he would carry his mini-14 with him and that the first son of a bitch who laid a hand on him would die. The state was directed to protect the receiver as an officer of the court in legal possession of the property.

Thereupon, the Corson County State's Attorney contacted the law enforcement people of the State of South Dakota. As a result, the Attorney General, on behalf of the State of South Dakota, and the Corson County State's Attorney, on behalf of that county, reported to the court that they were unable to protect the receiver's custodial interests in the property on the Dale ranch. As a result of advice by law enforcement officers of the county and state and premised upon the entire record, the trial court entered its order March 18, 1983, directing the receiver to take physical possession of the property which had been in his legal possession, and providing for sale of the cattle without waiting for a regular execution sale.

## ISSUES

### I.

DALES CONTEND THE ISSUANCE OF AN EX PARTE ORDER FOR PHYSICAL POSSESSION OF THEIR SECURED PROPERTY WAS UNCONSTITUTIONALLY ENTERED. WE DO NOT AGREE.

## II.

DALES CONTEND THAT THEIR RIGHTS WERE SO SUBSTANTIALLY VIOLATED BY THE ENTRY OF THE SAME EX PARTE ORDER THAT THE JUDICIAL PRONOUNCEMENTS ENTERED PRIOR THERETO ARE VITIATED. WE HOLD OTHERWISE.

### DECISION

■ The due process clause requires, at a minimum, that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Dales insist they were denied due process of law by the ex parte order of March 18, 1983, directing the receiver to take physical possession of the secured property. For this reason, they contend that this order and the previous orders and summary judgment appealed from are void and must be vacated.

Dales rely primarily upon the renowned case of *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and decisions stemming therefrom to support their contentions. However, the *Fuentes* line of cases are immediately distinguishable. All of those cases pertain to prejudgment seizures of property without notice or hearing, based solely on complaint or affidavit, with no judicial intervention. The procedure complained of herein was an expedited execution of judgment, which judgment was duly noticed and heard, and was subsequent to six prior court hearings in which Dales had taken part.

■ Nevertheless, even in a prejudgment seizure situation, the Supreme Court has acknowledged that under certain exigent circumstances, other interests may be considered in determining the due process requirements. The due process question must take account not only of the interests of the buyer of the property but those of the seller as well, or in this instance, the lender with a security interest. *See Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). There

may be cases in which a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods. *Fuentes,* 407 U.S. 67, 92 S.Ct. 1983.

In the absence of extraordinary circumstances, certain procedural safeguards must be followed before a person is deprived of a significant property interest. Generally, he must be given notice of the creditor's claim, and an opportunity to be heard before his property may be seized. However, if the interests of the creditor cannot be protected by allowing such prior notice and hearing, then there must be other procedural safeguards to sufficiently protect the property rights of the alleged debtor. *These standards are meant to be flexible, to constitutionally accommodate the rights of all parties involved.* (Emphasis supplied mine.)

*Mobile Components, Inc. v. Layon,* 623 P.2d 591, 593–94 (Okla.1980), *cert. denied,* 454 U.S. 963, 102 S.Ct. 502, 70 L.Ed.2d 378 (1981).

■ Summary judgment was issued in favor of PCA on March 17, 1983, providing for sale of the property involved as on execution. On March 18, 1983, the trial court ordered immediate execution of the judgment, without notice, based upon the following findings as stated in that order: 1) There had been numerous threats of violence by Byron Dale; 2) some of the property involved had been transported from Dales' ranch; 3) the receiver was unable to provide supervision because of perceived threats; 4) law enforcement officials of county and state were unable to provide law enforcement for the protection of the receiver in his duties; 5) prior court orders had failed to protect the property; 6) the state felt they could provide law enforcement necessary to protect life only if the property was collected immediately and without notice; 7) law enforcement authorities of the state advised of no alternative to the entry of the order except abandonment of any attempt to enforce the court's orders.

The trial court concluded, based upon the foregoing, that execution without notice was required to protect the property, to enforce the decision of the court, to prevent further loss, and, particularly, to avoid injuries to persons in the execution of the court's order. An overlay of threatened violence hung like a cloud on the case and the trial court acted to avert the consequences thereof.

"The notice essential to due course and process of law is the original notice whereby the court acquires jurisdiction, and is not notice of the time when jurisdiction, already completely vested, will be exercised." *Taintor v. Superior Court*, 95 Cal.App.2d 346, 351, 213 P.2d 42, 45 (1949). "Whether notice of subsequent proceedings is necessary depends entirely upon whether some statute requires such notice—there is no constitutional right to notice of such subsequent proceedings." *Id.* Here, Dales had original notice and had participated in six hearings before the ex parte order was entered. In *Application of Jones*, 89 S.D. 191, 231 N.W.2d 844 (1975), exigent circumstances justified immediate execution of a judgment granting application for a certificate of authority to operate a motor carrier service. As appellants had already had their day in court and a decision had been rendered, the court held that once the judgment had been signed, there was nothing wrong with its speedy execution under the circumstances. "Our law, SDCL 15-6-62(a), provides that proceedings shall not be taken for the enforcement of a judgment until the expiration of thirty days after its entry, '[e]xcept as stated herein or as otherwise ordered by the court for good cause shown'." *Jones*, 89 S.D. at 196, 231 N.W.2d at 847. Here, the trial court obviously determined there were exigent circumstances.

As to the notice requirement in executing the judgment, SDCL 15-18-21 provides:

A levy under a writ, warrant, or execution upon a judgment, must be made by serving a notice of levy upon the clerk of the court in which it is docketed, describing the judgment by the title of its action, date, amount, book, and page of docketing, and by mailing copies of such notice of attachment by registered or certified mail to the judgment debtor, and the present owner of the judgment as shown by the docket, and to their attorneys of record, if any, at their last known post-office addresses.

However, "where the property consists of personal property in the possession of ... a receiver appointed in the action, who is foreclosing a lien thereon, ... no levy shall be required for the sale thereof...." SDCL 15-18-18.

The receiver had legal possession as of December 1982. He finally took physical possession of the personal property security on March 19, 1983. The cattle were sold at a public auction market on March 24, 1983. The receiver's attorney gave notice of a hearing to determine the regularity of that sale and other matters on April 5, 1983. Thereafter, a hearing was held thereon. Dales objected to certain expenses but not to the reasonableness of the sale or the price obtained. On May 17, 1983, the court entered its order approving the receiver's report except as to certain expenses.

We thus determine that Dales were afforded due process in all proceedings involved in this action.

Finally, we rebuke North Dakota counsel (Vogel Law Firm of Mandan) and South Dakota counsel (John N. Gridley III of Sioux Falls) for their attack upon the trial court by employing this language, on behalf of Dales, in the filed brief: "The [trial] Court had become obviously more than a judicial body. It had become an advocate for [the] PCA." Such language impugns the impartiality and neutrality of the trial court. We reject its usage.

The judgment is affirmed.

All the Justices concur.

WUEST, Circuit Judge, acting as Supreme Court Justice, participating.