STATE of South Dakota, Plaintiff
and Appellee,

v.

Byron C. DALE, Defendant
and Appellant.

No. 14804.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1985.

Decided Dec. 4, 1985.

Rehearing Denied Dec. 30, 1985.

Dennis R. Holmes, Chief Deputy Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., on the brief.

Christopher Baumann of Baumann & Claggett, Spearfish, for defendant and appellant.

WUEST, Acting Justice.

This is an appeal from a circuit court judgment affirming a judgment of conviction in magistrate court following a jury verdict of obstructing law enforcement officers, pursuant to SDCL 22–11–6, and resisting legal process, pursuant to SDCL 22–11–1. We affirm.

In the fall of 1982, Byron C. Dale (appellant) presented a note to the Production Credit Association (PCA) proposing to repay money he borrowed from the PCA with hay and silage. The PCA rejected the proposal and initiated legal proceedings to inspect farm machinery and livestock owned by appellant, which secured the debt, and to foreclose on said property under the terms of the security agreement.

The PCA asked that a receiver be appointed to protect the collateral; and, on January 6, 1983, Harry Kittelson (Kittelson), a former Corson County Sheriff, was qualified and appointed. At this time, the secured property was under Kittelson's control; however, the farm machinery and livestock remained in appellant's physical possession so he could continue his ranching business. Kittelson testified that on the day he was appointed he went to appellant's ranch near Timber Lake to talk with him. When appellant came in from the pasture to speak to Kittelson, he said "you're not going to take my stuff, you'll do it over my dead body." Kittelson stated he heard appellant make statements to this effect on several occasions.

On January 11, 1983, appellant went to the office of Corson County State's Attorney Harvey Crow (Crow). Crow testified that the two discussed the consequences of any attempt to repossess appellant's property. Crow stated: "At one point in our conversation, Byron became very quiet and his voice got choked with emotion and he said that, 'if anybody tries to take my property, I will take up an automatic rifle and there would be blood on the ground probably including mine.'" Crow testified that twice during the conversation appellant mentioned using an automatic rifle, and he believed appellant was sincere when he made the pronouncements.

On March 11, 1983, appellant met with Jerry Baum (Baum), the Director of the South Dakota Highway Patrol, and Don Gromer (Gromer), a special agent for the South Dakota Division of Criminal Investigation. Gromer testified appellant stated several times during the meeting that he would defend his property with his life. Baum testified appellant told them they would have to blow his head off. Specifically, appellant stated: "Boys, if you roll them trucks, there's going to be hell to pay. There's going to be trouble." Baum and Gromer both stated they believed appellant was serious when he made the statements.

On March 13, 1983, the trial court mailed a formal order to all parties concerned, granting summary judgment to the PCA in its foreclosure action against appellant. On that same day, Crow received a telephone report from the Corson County Sheriff's Office that part of the secured collateral, approximately 180 calves, were missing from appellant's ranch. As a result of this loss, an *ex parte* hearing was held in circuit court on March 16, 1983. At the hearing, the PCA asked the court to issue an order compelling the receiver to take immediate possession of the remaining secured property on appellant's ranch. The court informed Crow that the order would be issued, and that law enforcement should provide security for the receiver and any employees hired to take possession of the collateral. Because local law enforcement lacked the manpower required for the undertaking, the assistance of state officials was requested. A telephone conference was held with the State Attorney General,

who was informed that the order would be issued.

On March 18, 1983, state officials, including the Governor and the Attorney General, met and devised a plan to draw appellant away from the ranch so that the order could be executed without violence. It was agreed that Gromer would contact appellant and arrange a meeting on the following day between the two of them and the Attorney General in Mobridge, South Dakota. Once at the meeting, the Attorney General planned to inform appellant that the receiver was at the ranch taking possession of the collateral and that Dale would be allowed to go there and view the process if he so desired.

The plan was rendered useless, however, for on the morning of March 19, 1983, while staying at his second residence in Mobridge, appellant was informed by telephone that fifteen highway patrol cars were refueling in Selby, South Dakota, and heading west toward his ranch. Upon receiving this information, appellant drove to the ranch. While there, he received a telephone call from Governor Janklow, who attempted to dissuade him from interfering with the execution of the order. Appellant persisted in saying that he would defend the property with his life. The Governor made it clear that the order would be enforced and appellant subdued if he attempted to interfere. Despite this warning, appellant remained on the ranch.

During this time, the Attorney General and Gromer were on their way to Mobridge for the scheduled meeting with appellant. While en route, they were informed by a radio dispatch that appellant was trying to contact them. They stopped in Selby where Gromer called appellant's Mobridge residence and was informed by Mrs. Dale that appellant was at the ranch. Gromer testified that he then called appellant at the ranch, and appellant told him he felt tricked and had gone to the ranch to defend it. Appellant also spoke with the Attorney General, who stated appellant made it clear he was aware that someone was coming to take possession of the property.

Because the original plan had been thwarted by appellant's return to the ranch, an alternate plan was devised in which Baum and State Trooper Pat Murphy (Murphy), an expert in defensive tactics, would try to remove appellant from the ranch peacefully or subdue him. They believed appellant would be armed; and, consequently, it was decided that Murphy would make the first move to prevent appellant from using his weapon while Baum prepared to stop any others who might be present.

Baum and Murphy drove to appellant's ranch and walked up to the house. Appellant was talking on the telephone in the kitchen area and waved for them to enter. Baum and Murphy testified that they observed a shoulder weapon under appellant's shirt and mini 14 rifle loaded with two 20-round clips taped together lying on the kitchen table. Appellant moved the rifle to a chair next to where he sat and told the two where to sit, saying he did not want Murphy behind him. At this time, Baum showed appellant a copy of the court order. Appellant told Baum that he might be willing to give up 70 calves if the PCA would advance him some operating money. Baum, however, explained that he had no authority to negotiate and asked appellant to go to Timber Lake and talk to the PCA. Baum testified that, at this point, it became apparent appellant would not leave the ranch and the only way to avoid a gun battle was to subdue him. Murphy struck appellant with a ketchup bottle from the kitchen table, hoping to knock him out. Appellant remained conscious, however, and a struggle ensued. The two eventually succeeded in overcoming appellant and Murphy used the radio to call for assistance, which arrived shortly thereafter. Appellant was removed from the premises and subsequently arrested and charged with obstructing law enforcement officers, pursuant to SDCL 22-11-6, and resisting legal process, pursuant to SDCL 22-11-1. He was tried and convicted on both counts before a jury in magistrate court. Appellant appealed the conviction to the circuit court and the conviction was affirmed.

On appeal to this court, appellant raises several issues which were not presented to, or determined by, the circuit court on appeal from magistrate court, including: (1) the trial court erred by admitting acts and statements made by appellant prior to the day of his arrest; (2) the trial court erred by admitting weapons and gas masks found on appellant's ranch after the arrest; (3) the trial court erred in refusing particular jury instructions requested by appellant; and (4) the magistrate court was without jurisdiction to hear the trial. The instant appeal, however, is an appeal from the judgment in circuit court. Consequently, our review is circumscribed by and limited to questions presented and determined by that court and to claims of error directed to that court's resolution of such issues. *See, e.g., State v. Hayen,* 201 Neb. 789, 272 N.W.2d 277 (1978); *State v. Price,* 60 Ohio St.2d 136, 398 N.E.2d 772 (1979); *State v. Williams,* 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977); *State v. Cunningham,* 93 Wash.2d 823, 613 P.2d 1139 (1980).

The Supreme Court of Wisconsin addressed the issue of whether it should consider issues not presented on appeal in circuit court in *State v. Killory,* 73 Wis.2d 400, 243 N.W.2d 475 (1976). In *Killory,* as in the instant action, appellant was tried and convicted of misdemeanor charges in magistrate court. On appeal to circuit court, he failed to present several issues which were subsequently presented on appeal to the Supreme Court. The Wisconsin Court stated:

> This court has recognized that one of the reasons for directing appeal of misdemeanors to the circuit court is to provide for economic and orderly administration of justice.... The effectiveness of such procedure is severely hampered by failure to present all issues to the circuit court. The failure to so present all issues to the circuit court would relegate such an appeal to merely a 'holding action' and render it meaningless judicial procedure.... On appeal to this court the defendant has no right to present issues for the first time which were never presented on appeal to the circuit court. Failure to present errors to the

circuit court on review deprives this court of the benefit of the reviewing court's opinion and conclusions on those issues.

73 Wis.2d at 411, 243 N.W.2d at 482 (citations omitted).

We find this rationale persuasive, notwithstanding the fact that the *Killory* Court addressed the newly presented issues for undisclosed reasons of policy and judicial administration. Thus, we decline to rule on the issues not presented on appeal to the circuit court.

The issues presented to the circuit court on appeal from magistrate court, which are now properly before us, are whether the evidence was sufficient to support a guilty verdict on either count. In *State v. Gallegos,* 316 N.W.2d 634, 639 (S.D.1982), this court stated: "In determining the sufficiency of evidence on appeal, we examine whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." Moreover, "[i]n making such a determination, this Court will accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict." *State v. Moeller,* 298 N.W.2d 93, 94 (S.D.1980). *See also State v. Dietz,* 264 N.W.2d 509 (S.D. 1978); *State v. Best,* 89 S.D. 227, 232 N.W.2d 447 (1975).

Appellant was charged with obstructing law enforcement officers under SDCL 22–11–6. Under this statute, the essential elements of the crime are: (1) the threatened use of violence, force or physical interference, or obstacle; (2) done intentionally; (3) which obstructs, impairs or hinders the enforcement of the criminal law or the preservation of the peace by law enforcement officers; and (4) acting under color of their official authority. The facts of this case meet all of these elements. Appellant's repeated threats of violence, bloodshed and death, made in the days prior to his arrest, and his statements to the Governor via telephone on that day were intended to hinder and prevent the execution of the court order relating to the seizure of appellant's property. The re-

peated threats of violence did, in fact, hinder and obstruct the execution of the order, inasmuch as it required the assembly of numerous state officials in order to preserve the peace therein. That the officers were acting under color of their official authority and were engaged in the preservation of the peace is obvious from the record.

■ Furthermore, SDCL 22–11–6 does not require that there be a technical or physical assault upon the officers, nor that violent or physical resistance be exerted to constitute the offense. *State v. Wiedeman*, 321 N.W.2d 539 (S.D.1982). *See also Bathke v. Myklebust*, 69 S.D. 534, 12 N.W.2d 550 (1943); *State v. Merrill*, 52 S.D. 129, 216 N.W. 874 (1927). Thus, the circuit court judgment is affirmed on this count.

■ As to the second count, resisting execution of legal process under SDCL 22–11–1, the record clearly shows that appellant resisted the court order requiring the receiver to take possession of certain collateral. Appellant argues that because he did not know that an actual order had been issued, he cannot be accused of resisting such order under the statute. Appellant's numerous threats to officials, his trip to and armed presence at the ranch during the State's attempt to peacefully execute the court order, and his refusal to leave, provide more than sufficient proof that he knew of the order and constitute sufficient evidence to support the jury's verdict. Therefore, the circuit court's judgment is also affirmed on this count.

FOSHEIM, C.J., MORGAN and HENDERSON, JJ., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

---

\* See photos of Dale, Defendant's Exhibits A and B, attached hereto and by this reference made a part hereof.

HENDERSON, Justice (concurring).

In concurring with this opinion, I wish to direct the reader's attention to *Northwest S.D. Production Credit Ass'n v. Dale*, 361 N.W.2d 275 (S.D.1985), which sets forth an additional graphic factual background leading to this criminal action.

As a matter of humanity, I wish to express that Trooper Murphy, who was an expert in defensive tactics and described as a marshall arts instructor, and who was specially selected to aid Jerry Baum, Director of the South Dakota Highway Patrol, to subdue Dale, should not have used a ketchup bottle to strike Dale on the forehead inflicting gashes on his face.\* Director Baum and Trooper Murphy had agreed, before Dale waved them to come into the house and sit at the kitchen table, that Murphy was to make the first move and strike the first blow. In Murphy's expertise, there should have been some maneuver, other than employing a ketchup bottle, to render Dale under the control of law enforcement. It is noted that after Dale was struck on the forehead with a tremendous blow by the ketchup bottle, a struggle ensued between Dale, Trooper Murphy, and Director Baum.

The State of South Dakota did have a valid court order and law enforcement officials were acting pursuant thereto. The ketchup bottle blow and the ensuing struggle were subsequent events; the only question presented by this appeal was if there existed sufficient evidence in the record to support the convictions. Dale's appeal to the circuit court was, essentially, a challenge to the sufficiency of the evidence and our scope of review is confined to those challenges.