STATE of Wisconsin, Plaintiff-Respondent,

v.

Huel Jesse THOMPSON, Defendant-Appellant.†

Court of Appeals

*No. 91-2652-CR. Submitted on briefs August 11, 1992.—Decided October 6, 1992.*

(Also reported 493 N.W.2d 729.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Joel H. Rosenthal*, of Brookfield.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J.  Huel Jesse Thompson appeals from an order denying his motion for reconsideration of the sentence imposed following his guilty plea to first-degree reckless homicide while armed with a dangerous weapon, contrary to secs. 940.02(1) and 939.63(1)(a)2, Stats. Thompson claims that the trial court abused its sentencing discretion by considering his "laudable background" as an aggravating rather than mitigating factor. Because we conclude that a trial court may consider a person's laudable background in aggravation, as well as mitigation, and because the trial court properly did so in this case, we affirm.

On September 9, 1990, Thompson fatally shot Patricia Jones in the head. He was charged with first-degree intentional homicide. Thompson denied any

intent to kill Jones. He claimed he was under the influence of alcohol at the time of the shooting. He also claimed that even though he had fired the gun just prior to the fatal shooting, he did not know the gun contained any more bullets when he shot Jones. Conceding some merit to Thompson's claims, the prosecution filed an Information charging first-degree reckless homicide while armed with a dangerous weapon,[1] to which Thompson pled guilty.

At the sentencing, the prosecutor noted that Thompson had no prior criminal history, but argued that "given the consequences of his acts," the court should impose a sentence "of not less than 20 years up to the maximum allowed."

The trial court also considered the defense argument that Thompson's "alcohol addiction" was to blame for the shooting. Defense counsel argued:

> [Thompson] said this was a situation which is not absolutely unheard of in his life, that he only attributes it as one more catastrophic result of alcohol addiction, and when you look at the resume that was provided to the Court of the medical training center from 1978, you can see that this is not a characteristic of Mr. Thompson's life up to 1990. He is a person who is educated. He is a person who is employed. He is a person who had recently married . . ., but he is also a person [for] whom alcohol became an increasingly [in]surmountable problem, and I think the lo[s]s of the job in Bellwood was one of the, as they say,

---

[1] First-degree reckless homicide is a class B felony that carries with it up to a twenty-year prison term. Section 939.50(3)(b), Stats. The penalty enhancer of "while armed with a dangerous weapon" increases the maximum potential penalty to a twenty-five year prison term. Section 939.63(1)(a)2, Stats.

beginning and ending. It was a reasonably good job and he lost it due to alcohol abuse.

This entire situation occurred on an evening after he had been drinking, after he was confronted in his home, he believed, by people who were threatening. They had left, but he attributes the fact that he had used the gun, had the gun loaded, gun available to that prior altercation.

He[,] however[,] firmly and continually reiterates to the Court that he believes that this was essentially a reckless act rather than an intentional act, did not intend to cause the death of Patricia Jones, that he had been drinking and he had therefore exercised [sic?] what he did. His first statement to me was he said it was incredibly bad judgment in that having the gun, having the gun loaded and utilizing the gun during the argument with Pat Jones, led inevitably to this catastrophe.

Defense counsel also pointed out to the court that there had not been an antagonistic relationship between Thompson and Jones. Thompson's wife addressed the court in support of that point. She stated that Jones had been staying with the Thompsons at the time of the shooting and "she was like a family member."

Thompson then addressed the court. He apologized to Jones' family and stated that he had not intended to hurt or kill Jones.

In imposing sentence, the court stated:

Here we have the necessity once again as we do on a daily basis now to review another senseless miserable tragedy. I agree with both [the prosecution] and [defense counsel] that based upon Mr. Thompson's background which is one of the factors that I must consider in sentencing, that the maximum sentence is not appropriate in this case. However, I disagree with the notion of exercise of poor judgment.

261

Exercise of poor judgment is shoplifting a candy bar or breaking into a garage. Putting a bullet into someone's head goes a little bit beyond exercise of poor judgment in my view.

The egregious factor in this case and the thing that precipitated this tragedy is that Mr. Thompson chose to arm himself with a lethal weapon while intoxicated . . . . While he may not have intended to kill the victim in this case, and based upon my review of the facts at the time that I accepted the plea and my review of the material that's before me now, I agree that he probably didn't intend to kill her. He created a situation of unreasonable risk of death. That's what this statute is about, and as a matter of fact, that unreasonable risk of death did as it usually does result[ ] in the death of an individual.

The seriousness of the offense is an important factor in this sentencing. The combination of the alcohol and the gun and the fact that based upon Mr. Thompson's background, he should have known better. The Supreme Court in State v. Killory, once said in dicta on the issue of sentencing . . . that individuals who have more knowledge and more benefit of training and experience can be appropriately held to a higher standard. It's difficult to extrapolate that concept to these facts because I don't mean to say by that that individuals with less training and skills somehow have carte blanche to arm themselves while intoxicated, arm themselves at the virtual drop of a hat as they now do in the streets of this community. I don't want to be misunderstood in that respect, but applying the notion of individualized justice to Mr. Thompson while his laudable background argues against the giving of a maximum sentence which I have indicated I'm not going to do, it also militates in favor of judging Mr. Thompson somewhat more harshly.

Mr. Thompson had opportunity and chose instead of following those opportunities indulged in addiction to the point where he caused the death of an individual. That's what happened here, and the fact that this was an individual that enjoyed a good relationship with the Thompson family does not mitigate this offense. It makes it even more tragic of course.

. . . .

As far as specific deterrence is concerned, my analysis of Mr. Thompson's background leads me to believe that this is not a specific deterrence case. I'm of the belief that Mr. Thompson probably won't ever kill anyone again, no matter what I do, which is true in most homicide cases anyway in my experience.

. . . .

Mr. Thompson's combination of alcohol and firearms clearly make him a severe danger to the community. There's no question about that either.

The court then sentenced Thompson to an indeterminate prison term of not more than twenty years with credit for time served. Thompson subsequently moved for reconsideration of his sentence. Following a hearing, the court denied Thompson's motion.

We will not disturb a sentence imposed by the trial court unless the trial court abused its discretion.*See Ocanas v. State,* 70 Wis. 2d 179, 183, 233 N.W.2d 457, 460 (1975). Indeed, "[t]here is a strong policy against interfering with the trial court's sentencing discretion." *State v. Curbello-Rodriguez,* 119 Wis. 2d 414, 433-434, 351 N.W.2d 758, 767 (Ct. App. 1984). Further, the trial court is presumed to have acted reasonably, and the burden is on the appellant to "show some unreasonable or unjustifiable basis in the record for the sentence complained of." *Id.* at 435, 351 N.W.2d at 768.

Thompson asserts, in effect, that the trial court employed an "unreasonable or unjustifiable basis" for the sentence. He argues that the trial court abused its discretion by "treating Thompson 'somewhat more harshly' in light of his laudable education and work history," and by considering "his laudable background as an aggravating rather than mitigating circumstance." Thompson also argues that *State v. Killory*, 73 Wis. 2d 400, 243 N.W.2d 475 (1976), does not support the trial court's reasoning. Finally, Thompson argues that Wis. Adm. Code sections SC 6.01(1)(d) and (e) support his argument that his "laudable background" can only be considered as a mitigating factor.

A trial court abuses its sentencing discretion when it fails to state the relevant and material factors that influenced its decision, relies on immaterial factors, or gives too much weight to one sentencing factor in the face of other contravening considerations. *Ocanas*, 70 Wis. 2d at 187, 233 N.W.2d at 462. The weight given to each sentencing factor, however, is left to the trial court's broad discretion. *Id.* at 185, 233 N.W.2d at 461. A trial court exceeds its discretion as to the length of the sentence imposed "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Id.*

When imposing sentence, a trial court must consider: the gravity of the offense, the offender's character, and the public's need for protection. *State v. Jones*, 151 Wis. 2d at 488, 495, 444 N.W.2d 760, 763 (Ct. App. 1989). The trial court may also consider: the defendant's past record of criminal offenses; the defendant's history

264

of undesirable behavior patterns; the defendant's personality, character and social traits; the presentence investigation results; the viciousness or aggravated nature of the defendant's crime; the degree of the defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance or cooperativeness; the defendant's rehabilitative needs; the rehabilitative needs of the victim; and, the needs and rights of the public. *Jones*, 151 Wis. 2d at 495-496, 444 N.W.2d at 763-764.

Whether a particular factor or characteristic relating to a defendant will be construed as either a mitigating or aggravating circumstance will depend upon the particular defendant and the particular case. This is a principle inherent in the concept of individualized sentencing. *See In re Felony Sentencing Guidelines*, 120 Wis. 2d 198, 200-201, 353 N.W.2d 793, 794-795 (1984); *McCleary v. State*, 49 Wis. 2d 263, 275-276, 182 N.W.2d 512, 518-519 (1971).

There is an old adage that to whom much is given, much is expected. *See Luke* 12:48 (New King James). Here, the trial court recognized that despite Thompson's lack of a prior criminal record, and his education and employment history, Thompson, nevertheless, committed a serious offense that resulted in the death of another human being. The trial court's conclusion that Thompson's conduct was especially egregious, when viewed in light of his "laudable background," is not "unreasonable or unjustifiable." *See Curbello-Rodriguez*, 119 Wis. 2d at 435, 351 N.W.2d at 768.

Thompson's argument that *Killory* does not support the trial court's reasoning is wrong. In *Killory*, the court noted that the defendant had obtained a doctorate

degree in counseling psychology and was employed as a college psychology professor at the time he committed acts of child abuse that he had claimed were treatment methods. *Killory*, 73 Wis. 2d at 402, 243 N.W.2d at 478. At sentencing, the trial court took into account the extent of the defendant's education and noted that the defendant had "used poor professional judgment." *Killory*, 73 Wis. 2d at 409, 243 N.W.2d at 481. The defendant's sentence was affirmed on appeal. *Id. Killory* does, therefore, at least implicitly, support the proposition that trial judges can consider positive attributes or characteristics as "aggravating" circumstances, consistent with the principles of individualized sentencing. *See also Curbello-Rodriguez*, 119 Wis. 2d at 435, 351 N.W.2d at 768 (no abuse of discretion found in defendant's sentence for nine counts of sexual assault and one count of abduction where the trial court considered that because the defendant was educated, "he should [be] more aware of his actions").

Thompson also argues that sections 6.01(d) and (e) of Chapter SC of the Wisconsin Administrative Code support his argument that Thompson's "laudable background" can only be considered as a mitigating circumstance.[2] Sections 6.01(d) and (e) state:

*Mitigating circumstances.* (1) Mitigating circumstances may require that the guideline sentence not

---

[2] Thompson concedes that "this is not a sentencing guideline case." Indeed, if it were, appellate jurisdiction would be limited by sec. 973.012 Stats. *See State v. Halbert*, 147 Wis. 2d 123, 129-133, 432 N.W.2d 633, 636-637 (Ct. App. 1988). Here, however, Thompson refers to the guidelines not to argue that the sentence exceeded a permissible range, but rather, to suggest that guideline criteria provide persuasive authority. So qualified, we address Thompson's argument

be imposed. Mitigating circumstances to be considered in sentencing include but are not limited to the following:

. . . .

(d) The offender has maintained a substantial crime-free period, adult and/or juvenile, before this offense occurred.

(e) The offender has demonstrated responsible action and judgment in other aspects of his or her life.

Nowhere do the administrative rules state or imply that the listed factors *only* be considered in a particular manner, in mitigation or aggravation. In fact, Section 1.01, clarifies the "[a]uthority and objectives of [the] rules":

Final discretion remains with the sentencing judge. It is the intent of the commission that these standards be useful, but not controlling . . ..

Wis. Adm. sec. SC 1.01(2). Additionally, Section 6.02, entitled "Aggravating circumstances," indicates that the various factors listed within that section are illustrative and not exclusive. *See* Wis. Adm. Sec. SC 6.02 ("Aggravating circumstances to be considered in sentencing decisions include *but are not limited to the following.* . .." (emphasis added)). Thus, consideration of Thompson's "laudable background" as an aggravating factor instead of a mitigating factor is not precluded by either Section 6.01 or 6.02.

The record indicates that the trial court appropriately considered the relevant sentencing factors in arriving at a reasonable sentence, which was within the statutorily-permissible penalty range. Because we conclude that the trial court did not abuse its discretion by considering Thompson's "laudable background" as an aggravating factor at sentencing, we affirm.

*By the Court.*—Order affirmed.