STATE of Wisconsin, Plaintiff-Respondent,

v.

Nathan T. HALL, Defendant-Appellant.

Court of Appeals

*No. 01–0808–CR. Oral argument March 5, 2002.—Decided April 23, 2002.*

2002 WI App 108

(Also reported in 648 N.W.2d 41.)

665

On behalf of the defendant-appellant, the cause was submitted on the brief of *Howard B. Eisenberg* of Milwaukee, with oral argument by Howard B. Eisenberg.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gregory M. Weber*, assistant attorney general, and *James E. Doyle*, attorney general, with oral argument by *Gregory M. Weber.*

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. CURLEY, J. Nathan T. Hall appeals from the judgment of conviction entered after he pled guilty to one count of felony murder, contrary to WIS. STAT. § 940.03 (1999–2000),[1] six counts of armed robbery, party to a crime, contrary to WIS. STAT. §§ 943.32(1) and (2), and 939.05, and one count of attempted armed robbery, party to a crime, contrary to

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

Wis. Stat. §§ 943.32(1) and (2), 939.32, and 939.05.[2] Hall also appeals from the trial court's order denying his postconviction motion. Hall claims: (1) his sentence, which establishes a release eligibility date well beyond his life expectancy, is *per se* excessive because none of the crimes for which he was convicted carry a sentence of life imprisonment; or, alternatively, (2) while the trial court briefly mentioned the three primary sentencing factors, it failed to explain how these factors yield a 304–year sentence. Because we agree that the trial court gave inadequate reasons for the sentence imposed, and, additionally, because we are unable to find facts in the record to support the trial court's sentencing decisions, we reverse and remand with directions.[3]

---

[2] Although it is clear from the record that Hall pled guilty to armed robbery, a Class B felony, contrary to Wis. Stat. § 943.32(1) and (2), the judgment of conviction in this case states that Hall pled guilty to robbery with use of force, a Class C felony, contrary to Wis. Stat. § 943.32(1)(a). We remand this matter to the trial court for the clerk of courts to correct this error. *See State v. Prihoda*, 2000 WI 123, ¶ 5, 239 Wis. 2d 244, 618 N.W.2d 857 (stating that the trial court must correct a clerical error in the sentence portion of a written judgment or direct the clerk's office to make the correction).

[3] Because resolution of this issue is dispositive of Hall's appeal, we decline to address whether Hall's sentence is *per se* excessive. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (holding that if a decision on one point disposes of the appeal, an appellate court need not address the other issues raised); *see also State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground."); *Grogan v. Public Serv. Comm'n*, 109 Wis. 2d 75, 77, 325 N.W.2d 82 (Ct. App. 1982) ("We do not decide constitutional issues if the resolution of other issues can dispose of an appeal.").

## I. Background.

¶ 2. The charges against Hall arose out of a string of armed robberies that occurred on the north side of Milwaukee between November 23, 1999, and February 6, 2000. During one of the robberies, on December 10, 1999, a sixteen-year-old girl was killed by Hall's co-defendant, Michael Moore. On that date, Hall called Moore, asked him if he wanted to make some money, and told him that he "had a spot picked out," meaning that he had found a location that they could rob. Moore agreed and the two drove to a restaurant approximately ten blocks from Hall's residence. After circling the block a number of times, Hall handed Moore a handgun and told him: "Just go in there. They're going to see the gun and tell you [to] take all the money." Moore entered the restaurant while Hall waited in the car down the block. As Moore approached the counter, the owner of the restaurant and her daughter, who were standing with their backs to the entrance, slowly turned around. Moore pointed the gun at the young girl and told them, "Give me the money." Moore then fired one shot at point-blank range in the face of the victim, who fell to the floor. Moore ran out of the restaurant without any money.[4]

¶ 3. Hall was arrested on February 7, 2000, for his involvement in the robberies. He was charged with six counts of armed robbery, one count of attempted armed robbery, and one count of felony murder. Hall pled guilty to all eight counts. The trial court imposed the

---

[4] It is unclear whether Moore intentionally fired the weapon or whether it went off accidentally. Moore claimed that he did not remember pulling the trigger. He thought the gun went off accidentally because he was nervous and his body was shaking.

following consecutive sentences: (1) felony murder – forty years; (2) attempted armed robbery – ten years; (3) counts three, four and five of armed robbery – thirty-eight years on each count; (4) counts six and seven of armed robbery – forty years on each count; and (5) count eight of armed robbery, committed after December 31, 1999 – sixty years (forty years day-for-day incarceration, followed by twenty years of supervision).[5]

¶ 4. Hall's sentences total 304 years. For the first seven counts, release eligibility is computed as 25% of the sentence imposed, *see* WIS. STAT. § 304.06(1)(b), and for count eight, the release eligibility is counted day-for-day under the truth-in-sentencing legislation, *see* WIS. STAT. § 973.01. Accordingly, Hall will not be eligible for release for 101 years. Hall was born on May 29, 1978, and will be eligible for parole when he is 123 years old.

## II. ANALYSIS.

¶ 5. "[A] good sentence is one which can be reasonably explained." *McCleary v. State*, 49 Wis. 2d 263, 282, 182 N.W.2d 512 (1971). Hall argues that the court erroneously exercised its discretion by failing to adequately explain why a 304–year sentence, which assures that he will die in prison, was appropriate. *See id.* Because the trial court gave inadequate reasons for the sentence imposed, Hall's sentence is the product of an erroneous exercise of discretion. *See id.*

---

[5] Only one of the crimes, the armed robbery occurring on February 6, 2000, was committed after the effective date of the truth-in-sentencing legislation in Wisconsin, December 31, 1999.

¶ 6. However, our analysis does not conclude at that juncture. When the sentencing court fails to specifically set forth the reasons for the sentence imposed, "we are obliged to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained." *Id.* Therefore, "it is . . . our duty to affirm a sentence on appeal if from the facts of record [the sentence] is sustainable as a proper discretionary act." *Id.* From our examination of the facts of record, we cannot support the trial court's choice of sentence. *See id.* Thus, we conclude that Hall's sentence was the result of an erroneous exercise of discretion.

¶ 7. "At the very least, the sentencing court must consider the following three primary factors: (1) the gravity and nature of the offense, including the effect on the victim, (2) the character and rehabilitative needs of the offender, and (3) the need to protect the public." *State v. Spears,* 227 Wis. 2d 495, 507, 596 N.W.2d 375 (1999).

> The trial court may also consider: the defendant's past record of criminal offenses; the defendant's history of undesirable behavior patterns; the defendant's personality, character and social traits; the presentence investigation results; the viciousness or aggravated nature of the defendant's crime; the degree of the defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance or cooperativeness; the defendant's rehabilitative needs; the rehabilitative needs of the victim; and, the needs and rights of the public.

*State v. Thompson*, 172 Wis. 2d 257, 264–65, 493 N.W.2d 729 (Ct. App. 1992).

¶ 8. In situations where, as here, the defendant is convicted of more than one offense, the sentencing court may impose consecutive rather than concurrent sentences. *See State v. Borrell*, 167 Wis. 2d 749, 764–65, 482 N.W.2d 883 (1992). In sentencing a defendant to consecutive sentences, the trial court must provide sufficient justification for such sentences and apply the same factors concerning the length of a sentence to its determination of whether sentences should be served concurrently or consecutively. *See State v. Hamm*, 146 Wis. 2d 130, 156, 430 N.W.2d 584 (Ct. App. 1988). Therefore, in situations where the sentencing court has the ability to stack sentences consecutively, *ad mortem*, "[t]he sentence imposed should represent the minimum amount of custody consistent with those factors." *State v. Setagord*, 211 Wis. 2d 397, 416, 565 N.W.2d 506 (1997); *see also Borrell*, 167 Wis. 2d at 764–65.

¶ 9. Generally, there is a strong public policy against interfering with the sentencing discretion of the trial court. *See State v. Harris*, 119 Wis. 2d 612, 622, 350 N.W.2d 633 (1984). Thus, sentencing is left to the discretion of the trial court, and our review is limited to determining whether the trial court erroneously exercised that discretion. *See id.* Nevertheless, the supreme court has made it clear that "an [erroneous exercise] of discretion might be found under the following circumstances: (1) [f]ailure to state on the record the relevant and material factors which influenced the court's decision; (2) reliance upon factors which are totally irrelevant or immaterial to the type of decision to be made; and (3) too much weight given to one factor on the face

671

of other contravening considerations." *Ocanas v. State*, 70 Wis. 2d 179, 187, 233 N.W.2d 457 (1975) (citing *McCleary*).

¶ 10. In *McCleary*, the supreme court articulated the importance of creating a sentencing record that highlights the sentencing judge's logic in an explainable manner:

> It is thus apparent that the legislature vested discretion in the sentencing judge, which must be exercised on a rational and explainable basis. It flies in the face of reason and logic, as well as the basic precepts of our American ideals, to conclude that the legislature vested unbridled authority in the judiciary when it so carefully spelled out the duties and obligations of the judges in all other aspects of criminal proceedings . . . .
>
> . . . .
>
> It is thus clear that sentencing is a discretionary judicial act and is reviewable by this court in the same manner that all discretionary acts are to be reviewed.
>
> [T]here must be evidence that discretion was in fact exercised. Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards. [T]here should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth . . . .
>
> . . . .
>
> . . . By this we mean that this court should review and reconsider an allegedly excessive sentence whenever it appears that no discretion was exercised in its imposition or discretion was exercised without the underpinnings of an explained judicial reasoning process.

*McCleary*, 49 Wis. 2d at 276–78 (citations omitted). The *McCleary* court continued by explaining its rationale for requiring a reasoned explanation on the record of the trial court's sentencing decisions:

> [T]he requirement that the sentencing judge articulate the basis for [a] sentence will assist . . . in developing . . . a set of consistent principles on which to base his [or her] sentences . . . .
>
> . . . .
>
> In all Anglo-American jurisprudence a principal obligation of the judge is to explain the reasons for his [or her] actions. [The trial judge's] decisions will not be understood by the people and cannot be reviewed by the appellate courts unless the reasons for decisions can be examined. It is thus apparent that requisite to a prima facie valid sentence is a statement by the trial judge detailing his [or her] reasons for selecting the particular sentence imposed.
>
> . . . .
>
> The purpose of the sentencing statement is not only to aid in appellate review but also to facilitate the trial judge's rationale of his [or her] sentences. The requirement that the reasons for sentencing be stated will make it easier for trial judges to focus on relevant factors that lead to their conclusions.

*Id.* at 280–82 (citations omitted).

██

¶ 11. Thus, according to *McCleary*, there is a three-fold rationale for requiring sentencing courts to make a sufficient record detailing their reasons for the sentence imposed: (1) to provide the defendant, the victim, the victim's family, and the community as a whole with a satisfactory explanation of the debt owed

to society; (2) to provide the appellate courts with an adequate record for review; and (3) to aid the trial court in focusing on relevant factors in order to impose just sentences. *See also* ABA Standards for Criminal Justice Sentencing, § 18–5.18 (Commentary), at 209 (3d ed. 1994) ("The requirement of findings of fact serves multiple purposes. First, the discipline of thought necessary for a court's reasoned determination of a sentence is fostered by the process of articulation of the factual bases for the judgment. Second, findings of fact are essential to meaningful appellate review of sentences.")

¶ 12. Here, unfortunately, the trial court never adequately explained its reasons for imposing a 304–year sentence, which resulted from its imposition of Hall's sentences consecutively:

> When the [c]ourt does, ah, in fact sentences you, young man, the [c]ourt takes into consideration the nature of the offenses, and the [c]ourt applies its factors applicable to each one of the counts; your character, the risk that you pose to the community.
>
> . . . .
>
> Court[s] takes into consideration any past record of criminal offenses – you've had some minor contacts, not significant – your personality, character, social traits, the results of the [p]resentence [i]nvestigation, which the [c]ourt will make part of the sentencing record, your degree of culpability, your age, educational background, employment record, your remorse, repentance and cooperativeness, your need for close rehabilitative control, and the rights of the victim.
>
> . . . .
>
> So it's also my understanding during one of the courses of the – or at some other armed robbery a shot

was fired. And to do then the subsequent acts thereafter, after the life was taken, to go do subsequent armed robberies is – is – ah – is certainly, ah, egregious, horrific, whatever you want to call it. It's aggravating. And you are certainly responsible for it.

. . . .

So based on the entire record in this case, the [c]ourt . . . is going to impose [ ] sentence . . . .

¶ 13. The trial court's lack of analysis flies in the face of the ABA Standards for Criminal Justice Sentencing:

[A] sentencing court, when imposing sentence, should state or summarize the court's findings of fact, should state with care the precise terms of the sentence imposed, and should state the reasons for selection of the type of sanction and the level of severity of the sanction in the sentence.

. . . The statement of reasons may be relatively concise when the level of severity and type of sanction are consistent with the presumptive sentence, but the sentencing court should always provide an explanation of the court's reasons sufficient to inform the parties, appellate courts, and the public of the basis for the sentence.

ABA Standards for Criminal Justice Sentencing, § 18–5.19(b)(i), at 211–12.

¶ 14. In reference to sentencing for more than one offense or count, the ABA Standards direct: "[W]here the separate offenses are not merged for sentencing, a sentencing court should consider imposition of sanctions of a type and level of severity that take into account the connections between the separate offenses and, in imposing sanctions of total confinement, ordinarily should designate them to be served concur-

675

rently." ABA Standards for Criminal Justice Sentencing, § 18–6.5(c)(ii), at 230. However, where a court decides to impose sentences consecutively, "[t]he imposition of consecutive sentences of total confinement, where such sentences are permitted, should be accompanied by a statement of reasons for the selection of consecutive terms." *Id.* at 213 n.2 (citation omitted).

¶ 15. In the instant case, while the trial court was authorized to impose consecutive sentences pursuant to Wis. Stat. § 973.15(2)(a), it never explained why it imposed the sentences consecutively such that Hall will never live long enough to serve them.[6] Additionally, the trial court never, on the record, totaled the individual sentences from each count to determine the aggregate effect of the eight consecutive sentences and Hall's earliest possible date of release from prison. Finally, Hall's sentence exceeds the presentence investigation report's recommendation by approximately 200 years. The presentence report recommended a maximum sentence for all eight counts of 107 years with a period of four to six years of extended supervision.

¶ 16. Although the recommendations of the presentence report are not binding on the sentencing court, *see State v. Killory*, 73 Wis. 2d 400, 409, 243 N.W.2d 475 (1976), "the trial court should exercise its discretion on the whole record, including the presentence report," *State v. Burgher*, 53 Wis. 2d 452, 457, 192 N.W.2d 869 (1972); *see also Ocanas*, 70 Wis. 2d at 188 (stating that while the sentencing judge is not bound by

[6] Hall's term of incarceration is nearly double his life expectancy. Hall has a life expectancy of 63.7 years, according to the National Vital Statistics Report, Vol. 47, No. 28, December 13, 1999, p. 32.

recommendations in a presentence report, the report is a relevant factor in determining type and length of sentence). At sentencing, the trial court stated, "[The court] takes into consideration . . . the [p]resentence [i]nvestigation, which the [c]ourt will make part of the sentencing record." Thus, while the trial court may have relied on the recommendations contained in the presentence report, it neither addressed the report's conclusions nor explained why it added nearly 200 years to the report's recommended sentence. Again, "it appears that . . . discretion was exercised without the underpinnings of an explained judicial reasoning process." *McCleary*, 49 Wis. 2d at 278.[7]

¶ 17. Although the trial court briefly mentioned a number of the sentencing factors, it never applied those factors to Hall's case. In reading the trial court's sentencing decision, one could simply "fill in the blank" by inserting any crime and any sentence of any of number of years to be served concurrently or consecutively. Therefore, while the sentencing record reflects "decision-making," *i.e.*, the trial court decided to sentence Hall to 304 years' confinement in prison, the court failed to demonstrate "a process of reasoning . . . based on a logical rationale," *i.e.*, sufficient justification for consecutive sentences applying the same factors concerning the length of a sentence to its determination of

---

[7] The trial court's lack of reasoned analysis is further evidenced by the fact that it imposed a twenty-year period of extended supervision pursuant to WIS. STAT. § 973.01(2)(d), which is double the minimum required by statute. We can only wonder why a court would impose an extra ten years of extended supervision on a defendant who is not scheduled to be released from prison until he is 123 years old, and, therefore, will never live long enough to be placed on extended supervision, let alone serve an extra ten years.

whether sentences should be served concurrently or consecutively. *McCleary*, 49 Wis. 2d at 277; *see also Hamm*, 146 Wis. 2d at 156.[8]

¶ 18. The long length of Hall's sentence renders it meaningless. *See State v. Curbello-Rodriguez*, 119 Wis. 2d 414, 437, 351 N.W.2d 758 (Ct. App. 1984) (Gartzke, P.J., concurring) (concluding that sentencing a twenty-five-year-old defendant to eighty or one hundred years in prison is meaningless because it can never be served). Had the trial court's main concern been to ensure that Hall will never be released from prison and commit such crimes in the future, it could have fashioned his sentence in a more realistic and reasonable manner. We conclude that the trial court's sentencing decision is simply inadequate and, therefore, Hall's sentence is the product of an erroneous exercise of discretion.

¶ 19. However, as previously stated, our analysis does not end with this conclusion. "[R]ather, we are obliged to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained." *McCleary*, 49 Wis. 2d at 282. Thus, "it is . . . our duty to affirm the sentence on appeal if from the facts of record it is sustainable as a proper discretionary act." *Id.* This duty is premised on the following:

> [A]n appellate court can ask of a trial judge . . . that he state the facts on which he predicates his judgment, and that he give the reasons for his conclusion. If the facts are fairly inferable from the record, and the reasons indicate the consideration of legally relevant factors, the sentence should ordinarily be affirmed. If

---

[8] This is not to suggest that a trial court must apply a specific format or formula in sentencing decisions. The record must simply reflect the reasonableness of the sentence imposed.

there is evidence that discretion was properly exercised, and the sentence imposed was the product of that discretion, the trial judge fully complies with the standard.

*Id.* at 281.[9]

¶ 20. From an examination of the facts of record herein, we cannot find sufficient facts to support the trial court's choice of sentence. *See id.* Hall was convicted of crimes that do not carry a life sentence. *See generally* Wis. Stat. § 973.014. Nevertheless, because he is not eligible for parole until he turns 123 years old, the trial court essentially sentenced Hall to a life in prison by imposing the sentences consecutively. This sentence is far greater than necessary for the attainment of the trial court's identified societal goals. *See* ABA Standards for Criminal Justice Sentencing, at 29 ("All impositions

---

[9] On the other hand, our search of the record is not intended to supplant the trial court's sentencing decision or reduce the trial court's obligation to state at sentencing the relevant and material factors that influenced its decision. Our duty to "search the record," as set forth in *McCleary*, was established to allow appellate courts to affirm a sentencing decision that reflects "a process or reasoning based on facts that are of record or that are reasonably derived by inference from the record." *State v. Wagner*, 191 Wis. 2d 322, 332, 528 N.W.2d 85 (Ct. App. 1995). Although we are obliged to search the record for facts to sustain the sentence, trial courts should not interpret this duty as creating an opportunity to stuff the record with post-sentencing rationalizations that were clearly absent from the original sentencing decision. In the instant case, even after a careful review of the record, we cannot find sufficient reasons to support the sentence imposed.

of punishment should be no more than necessary for the attainment of identified societal goals.").[10]

---

[10] Further, under the indeterminate sentencing system that existed prior to December 31, 1999, "judges hand[ed] down basic sentences [but] the length of confinement and community supervision [was] determined by the Parole Commission." MICHAEL LEW, *Wisconsin Department of Corrections, Offenders Admitted Under Truth in Sentencing: January 1, 2000 through June 30, 2001,* at 1, (September 10, 2001). "In Wisconsin, offenders given an indeterminate sentence – aside from those sentenced to life – [were] eligible for parole consideration after serving 25 percent or 6 months of their sentence, whichever [was] greater." *Id.*

However, "[u]nder [truth-in-sentencing], discretion surrounding an inmate's confinement time in prison is essentially transferred from the Parole Commission to the judiciary." *Id.* The truth-in-sentencing legislation abolished parole and established an accurate system of sentencing; meaning that a sentence to one-year confinement in prison assures that the offender will be incarcerated for exactly 365 days before being released. *See* 1997 Wis. Act 283; *see also* MICHAEL B. BRENNAN & DONALD V. LATORRACA, *Truth-in-Sentencing,* Wisconsin Lawyer, vol. 73, no. 5, at 14, 14–17 (May 2000).

As explained by the Criminal Penalties Study Committee, an eighteen-person committee established by the truth-in-sentencing legislation, charged with the duty of investigating the effects of determinate sentencing in Wisconsin, making recommendations regarding the truth-in-sentencing legislation, and drafting proposed legislation necessary to implement their recommendations, the judiciary must grow with our evolving system of sentencing:

> The shift of more complete . . . sentencing decision[-] making to the judiciary places upon judges the task to more carefully fashion a sentence based upon the severity of the crime, the character of the offender, the interests of the community, and the need to protect the public. Judges are on the front lines of the criminal justice system every day, listening to victims and their

¶ 21. Hall concedes that the crimes he committed were exceedingly serious and he deserves a substantial prison term. We agree. However, we also agree that Hall, as do all criminal defendants, has a constitutional right to have the relevant and material factors which influence sentencing explained on the record by the trial court.[11] Accordingly, Hall's sentence is reversed and the cause is remanded for sentencing consistent with the dictates herein.[12]

*By the Court.*—Judgment and order reversed and cause remanded with directions.

¶ 22. SCHUDSON, J. (*concurring*). The majority opinion astutely acknowledges that " 'the discipline of

families, defendants and their families, law enforcement, prosecutors, defense attorneys, and the public.

The impact of this legislation in Wisconsin will be largely dependent on sentencing patterns exhibited by the judiciary and sentencing judges' abilities to communicate their decision-making processes. *See* Michael Lew, *Wisconsin Department of Corrections, Offenders Admitted Under Truth in Sentencing: January 1, 2000 through June 30, 2001,* at 1. Without adequate sentencing decisions at the trial court level, the legislature, the governor, the judiciary, and the public are removed from all communication from this front line of the criminal justice system.

[11] We are also mindful that District IV will be addressing the issue of whether a sentence imposed under the truth-in-sentencing legislation may be modified pursuant to Wis. Stat. § 973.19 in *State v. Champion*, 01–1894–CR.

[12] We pause to comment on the nature of a concurring opinion. Generally, a concurring opinion agrees with the conclusion of the lead opinion while providing a distinct rationale. Here, the contents of the concurring opinion do not reflect the views of the entire court.

thought necessary for a court's reasoned determination of a sentence is fostered by the process of articulation of the factual bases for the judgment,' " majority at ¶ 11 (citation omitted), and declares that while we search the record for reasons to uphold a sentence, we must not "stuff the record with post-sentencing rationalizations that were clearly absent from the original sentencing decision," majority at ¶ 19 n.9. I wholeheartedly agree, and I join in most of the majority opinion.

¶ 23. I write separately, however, for two reasons: (1) to explain my disagreement with the majority's comment that "[t]he long length of Hall's sentence renders it meaningless," majority at ¶ 18; and (2) to again convey our concern that a single circuit court continues to ignore our many warnings and, as a result, repeatedly fails to perform its most fundamental duties.

## I. A Meaningless *Sentence*?

¶ 24. The majority ably explains that the sentencing court erroneously exercised discretion. The majority goes too far, however, in declaring that "[t]he long length of Hall's sentence renders it meaningless." Majority at ¶ 18. Although, as the majority points out, Judge Gartzke expressed a similar view, *see State v. Curbello-Rodriguez*, 119 Wis. 2d 414, 437, 351 N.W.2d 758 (Ct. App. 1984) (Gartzke, P.J., concurring), and although Judge Martha Bablitch agreed with him, *see id.* at 438 (Bablitch, J., concurring), Judge Gartzke's comments must be considered in context.

¶ 25. In *Curbello-Rodriguez*, the court, with former Wisconsin Supreme Court Chief Justice Bruce F. Beilfuss, sitting as a reserve judge and writing the majority opinion, *rejected* a challenge to numerous consecutive and concurrent sentences—for three counts of first-degree sexual assault, six counts of

first-degree sexual assault as party to the crime, and one count of abduction—totaling eighty years. *See id.* at 420. Concurring, Judge Gartzke correctly acknowledged, "Special circumstances nevertheless exist when deciding whether sentences for multiple convictions should run concurrently or consecutively." *Id.* at 437 (Gartzke, J., concurring). He then went on to say, "One circumstance is longevity." *Id.*[1]

---

[1] Notably, however, Judge Gartzke was advocating for the adoption of ABA STANDARDS FOR CRIMINAL JUSTICE Standard 18–4.5(b), which limits a court's ability to impose consecutive sentences. Specifically, Judge Gartzke believed that a court " 'should be authorized to impose . . . a [consecutive] sentence only after a finding that confinement for such a term is necessary in order to protect the public from further serious criminal conduct by the defendant . . . .' " *State v. Curbello-Rodriguez*, 119 Wis. 2d 414, 438, 351 N.W.2d 758 (Ct. App. 1984) (Gartzke, P.J., concurring) (citation omitted; alteration in original).

The Wisconsin Supreme Court, however, has "repeatedly refused to accept guidelines or limitations on consecutive sentencing." *State v. Paske*, 163 Wis. 2d 52, 66, 471 N.W.2d 55 (1993); *see also State v. LaTender*, 86 Wis. 2d 410, 432, 273 N.W.2d 260 (1979); *Cunningham v. State*, 76 Wis. 2d 277, 284, 251 N.W.2d 65 (1977); *Drinkwater v. State*, 73 Wis. 2d 674, 684, 245 N.W.2d 664 (1976); *Weatherall v. State*, 73 Wis. 2d 22, 34, 242 N.W.2d 220 (1976).

In *Paske*, the Court noted:

> The legislature has enacted sec. 973.15(2), Stats. (1987–88), giving the court discretion in imposing concurrent and consecutive sentences. Adopting a limitation on this statute . . . would put us in the position of placing a restriction on something the legislature has already given the court wide discretion in doing. We adhere to our prior decisions which give deference to legislative enactment and judicial discretion, and therefore do not adopt any limitations on consecutive sentencing.

¶ 26. I agree. Longevity is a special circumstance a sentencing court should consider in determining whether sentences should be consecutive or concurrent. But the fact that the total time consumed by consecutive sentences exceeds a defendant's lifetime does not necessarily render the sentences "meaningless."

¶ 27. In sentencing, a court can properly express the community's outrage. A conscientious court can declare the separate significance of each crime, each victim, and each punishment. A compassionate court can respond to what may be each victim's need to see a strong and separate sentence delivered to the defendant.[2] And for the most serious crimes, the victims and the community have every reason to expect that the defendant's punishment will be beyond full mathematical implementation. *See* WIS. STAT. § 973.15(2)(a) ("court may impose as many sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentence").

¶ 28. This is anything but "meaningless." For the most serious crimes, victims, their families, and the community do find real meaning—real justice and perhaps even some recovery—when those who shattered their lives are sentenced to longer terms than they can ever serve.

---

*Paske,* 163 Wis. 2d at 67–68.

[2] The legislature, in WIS. STAT. § 950.01, has emphatically declared that victims' rights should be "honored and protected by law enforcement agencies, prosecutors and judges in a manner no less vigorous than the protections afforded criminal defendants." WIS. STAT. § 950.01; *see also* WIS. STAT. § 950.04(1v)(m) (allowing victims to provide statements concerning sentencing, disposition or parole).

## II. A Meaningless *Sentencing*!

¶ 29. Still, even if the *sentence* in this case, by virtue of its length, may not have been meaningless, the *sentencing,* by virtue of its legal and logical deficiencies, was. Our deep concern about this single circuit court can be better understood by reviewing even a small selection of the countless occasions we have been called upon to review its conduct in criminal case proceedings.

¶ 30. In 1995, in *State v. Haralson*, No. 94–0124–CR, unpublished slip op. (Wis. Ct. App. Feb. 28, 1995), a case involving habitual criminality convictions for first-degree sexual assault, armed robbery, armed burglary, and bail jumping, we quoted Judge Wagner's ruling on an identification suppression motion and then commented:

> We are concerned that the trial court's treatment of the identification motion is grossly inadequate for purposes of the appellate record. When explicating its ruling, the trial court should *clearly* discuss the relevant law and apply it to the facts of record. This procedure is not evident in the above ruling.

*Id.* at 5 n.1.

¶ 31. One week later, in *State v. Hall-El*, No. 94–0716–CR, unpublished slip op. (Wis. Ct. App. March 6, 1995), we summarily reversed the circuit court's denial of a request for resentencing. Again, we admonished Judge Wagner:

> The trial judge to whom the postconviction motion was assigned decided the motion without a hearing. Although a trial court need not always hold a hearing on a postconviction motion, in this instance the trial court merely signed a form order, giving no indication that it had considered the merits of Hall-El's motion. The

685

order simply denied Hall-El's motion because it presented "no new factors or other circumstances" that warranted sentence modification. As Hall-El points out in his brief-in-chief, he did not request sentence modification in his postconviction motion. Rather, he requested resentencing. Courts deciding postconviction motions should attempt to address the merits of the motions with some specificity for the benefit of defendants and to promote meaningful review of challenges to sentencing.

*Id.* at 7 n.3 (citation omitted).

¶ 32. In 1997, in *State v. Williams*, No. 96–1584–CR, unpublished slip op., (Wis. Ct. App. April 8, 1997), we concluded that the court erroneously exercised sentencing discretion. In language strikingly similar to that which we use in the instant appeal, we declared that Judge Wagner's comments were "inadequate" and did "not show that the court engaged in a logical process of reasoning to reach [its sentencing] decision." *Id.* at 2. Independently searching the record, however, we were able to affirm. Still, to assure that Judge Wagner understood our serious concern about his conduct, the concurring opinion added:

The majority correctly declares that "the trial court's comments at sentencing were inadequate" and fail to reflect "a logical process of reasoning." Majority slip op. at 3. The majority also accurately identifies why, under the standard of review articulated in *McCleary v. State*, 49 Wis.2d 263, 182 N.W.2d 512 (1971), we affirm rather than remand for the trial court to conduct a proper sentencing. I write separately, however, to express and further explain the enormous frustration [of appellate courts] when, again and again, [they] have little choice but to affirm [a] trial court's sentencing

[decision]s despite [the trial court's] complete failure to provide [any] statement[] reflecting any "logical process of reasoning."

Over the years this court has received numerous appeals—and has more appeals pending—of sentences from only one trial judge who consistently couches his sentencing comments in nothing more than references to "the totality of the circumstances" and "factors the court must take into consideration." As the majority has reiterated, such comments do not satisfy legal requirements. Moreover, the frequency with which such appeals arrive—all containing virtually identical language—leaves little doubt that even if the judge actually has considered the *individual* circumstances of each case, he has completely failed to articulate a sentence that could convey reasoning to or inspire confidence from defendants and victims, their friends and families, and the public.

The fact that, under *McCleary*, this court steps in to search the record and compensate for the trial judge's failures is no consolation. This court, distant in time and place from the sentencing scene, cannot understand the facts, know the nuances, see and hear the defendants and victims, and feel the forces in the courtroom as only a trial judge can. This court cannot recapture the trial judge's unique opportunity to address the defendant, the victim, the friends and families, and the public to provide the moral and legal leadership—the justice—that sentencing, at its best, seeks to assure.

Additionally, although the trial court's brevity may save *its* resources in the short run, such brevity not only reduces confidence in the sentencing process, but also imposes substantial costs on the justice system as well. Postconviction motions to modify sentences drain

resources of counsel and trial courts, and are but the prelude to countless appeals that otherwise would not be filed.

Thus, although it seems this court has little choice but again to affirm this trial judge's sentence, we would be little more than acquiescent "enablers" if we failed to admonish this trial judge with additional words of the supreme court in *McCleary*:

> In all Anglo-American jurisprudence a principal obligation of the judge is to explain the reasons for his actions. His decisions will not be understood by the people and cannot be reviewed by the appellate courts unless the reasons for decisions can be examined. It is thus apparent that requisite to a prima facie valid sentence is a statement by the trial judge detailing his reasons for selecting the particular sentence imposed.

*Id.* at 280–81, 182 N.W.2d at 521. Accordingly, I trust the trial court will understand that, once again, affirmance of its bottom line does not connote approval of its process.

*Id.* at 4–5 (Schudson, J., concurring).

¶ 33. Later in 1997, in *State v. Blunt*, No. 96–3237–CR, unpublished slip op. (Wis. Ct. App. Dec. 9, 1997), a case involving a conviction for armed robbery while concealing identity, party to a crime, we reversed the denial of the defendant's motion to withdraw his guilty plea, concluding that Judge Wagner had failed to properly advise him of his rights at the guilty plea hearing. *Id.* at 6–7. At the oral argument before this court in that case, Assistant Attorney General Mary Bowman conceded Judge Wagner's error and, referring specifically to him, expressed her frustration over "the

enormous amount of public resources that are . . . expended unnecessarily when . . . a trial judge does not comply with SM-32 [prescribing the requirements for a guilty plea]." TRANSCRIPT OF ORAL ARGUMENT IN *State v. Blunt*, No. 96–3237–CR, Oct. 29, 1997. Ms. Bowman lamented that she had "approached the problem through the district attorneys . . . in trying to find out what [they were] doing to try to keep [Judge Wagner] on track." *Id.*

¶ 34. In 1998, in *State v. Murillo*, No. 97–0184–CR, unpublished slip op. (Wis. Ct. App. April 28, 1998), a case involving convictions for two counts of first-degree recklessly endangering safety while armed, this court affirmed Judge Wagner's denial of the defendant's motion to withdraw his *Alford* plea, but only because the defendant had waived the issue he sought to raise on appeal. Believing that we should not apply waiver, I dissented and, in the process, provided Judge Wagner with yet one more reminder of this court's concern:

> Because this court repeatedly has admonished Judge Wagner regarding his failure to provide adequate records on guilty pleas and other matters, and because his failures do substantial injustice, and because his failures result in countless appeals that otherwise would be unnecessary (indeed, it was Judge Wagner's *Alford* plea proceeding that the supreme court reversed in [*State v. [George] Smith*, 202 Wis. 2d 21, 549 N.W.2d 232 (1996)]), invoking waiver to rescue yet two more of his clearly deficient proceedings (both the plea hearing and the post-plea hearing and decision) can only disserve the interests of justice. Invoking waiver to rescue this record undermines justice not only in this case, but also in countless others before Judge Wagner and any other judges who would take consolation from the thought of just how much this court can stomach.

*Id.* at 5. (Schudson, J., dissenting).

¶ 35. In 1999, in *State v. [Virgil] Smith*, No. 98–3106–CR–NM, unpublished slip op. (Wis. Ct. App. Aug. 13, 1999), a case involving a conviction for escape, we summarily rejected a no-merit report in part because, we concluded, the record of Judge Wagner's guilty plea proceeding reflected "an arguably meritorious issue as to whether Smith's guilty plea was knowing and voluntary." *Id.* at 9. Judge Wagner had accepted Smith's *pro se* guilty plea despite: (1) never advising Smith of the maximum potential penalty; (2) accepting Smith's *pro se* guilty plea questionnaire even though it listed no penalties in the spaces provided for such entries; and (3) providing a plea colloquy that included the following:

> THE COURT: You'll be waiving any possible defenses that you may have to the offense charged in the [c]riminal [c]omplaint, in other words, *legal defenses and stuff.*
>
> THE DEFENDANT: Auh-huh.
>
> THE COURT: *That kind of stuff.* You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: *That kind of stuff.* All right. Nobody's made any promises or threats to you to get you to plead guilty to the offense. *Right?*
>
> THE DEFENDANT: *No.*

TRANSCRIPT OF PROCEEDINGS, DOCUMENT 22, AT PAGE 9 (emphases added).

¶ 36. And finally, just as we were reviewing the challenge to the sentencing in the instant appeal, we also were facing yet one more of the many appeals of Judge Wagner's guilty plea proceedings. In *State v. Logan*, No. 01–1757–CR, unpublished slip op. (Wis. Ct.

App. April 2, 2002), the defendant challenged his conviction for first-degree sexual assault of a child. We summarily reversed, concluding that, once again, Judge Wagner: (1) failed to provide a proper guilty plea proceeding, this time by neglecting to review the elements of the crime; and (2) failed to provide a required hearing to consider the defendant's motion to withdraw his plea. *See id.* at ¶¶ 9–11.

¶ 37. Thus, for at least the seven years recounted in these decisions, judges of this district of the Wisconsin Court of Appeals have repeatedly reversed and admonished Judge Wagner and, apparently, the Attorney General's office has attempted to motivate corrective action.[3] And yet, as we see this month, Judge Wagner still fails to provide a proper guilty plea proceeding on a charge of first-degree sexual assault of a

---

[3] Judge Ralph Adam Fine (who was on the panels in the *Blunt, Murillo,* and *Virgil Smith* cases, but not on the panels in the other five cases recounted here), however, has authorized me to say that he never joined in an opinion that "admonished" Judge Wagner as he, Judge Fine, reads that word in this concurring opinion.

Lest there be any concern that only the judges of this appellate district would find fault with Judge Wagner's conduct of the most basic guilty plea proceedings, I note that, on a rare occasion when an appeal from Judge Wagner's court came to District IV, it met the same fate.

In *State v. Luedke*, No. 00-2459-CR, unpublished slip op. (WI App June 21, 2001), a case involving two felony charges of impersonating a peace officer, three District IV judges reversed Judge Wagner, concluding that he "did not adequately establish that [the defendant] had an awarenss of the essential elements of the crime." *Id.* at ¶ 7. The court explained that Judge Wagner had conducted critical portions of the plea colloquy in a "perfunctory" manner, thus failing to satisfy clearly established legal standards. *See id.*

child, and still fails to provide a minimally adequate explanation for the sentences he orders for armed robbery, armed burglary, and felony murder.

¶ 38. So where do we go from here? At oral argument in this appeal, we asked Assistant Attorney General Gregory M. Weber for his advice. Mr. Weber conceded the inadequacy of Judge Wagner's sentencing remarks. Specifically referring to Judge Wagner's apparent inability or unwillingness to correct his conduct, he expressed concern about what he termed a "fairly localized problem." *See* ORAL ARGUMENT TAPE IN *State v. Hall,* No. 01–0808–CR, March 5, 2002. Mr. Weber recommended that we publish a powerful decision reiterating themes such as those addressed in the concurring opinion in *Williams,* repeated in this opinion. *See* ¶ 11, above.

¶ 39. Assistant Attorney General Weber said that he thought it would be particularly important to emphasize to circuit court judges that when their sentencing remarks are inadequate, their sentencings may not always be saved by postconviction decisions elaborating their reasoning and, even if their sentencings are salvaged for appellate purposes, the judges have surrendered an irreplaceable opportunity to speak to the offenders, the victims, their families, and the community. *See id.* We completely agree.

¶ 40. And so, once again, we try . . . in as measured a manner as we know. We remain hopeful that this single circuit court will correct its course and sail smoothly. More realistically, perhaps, we remain confident that all other courts will better navigate their vessels, having learned valuable lessons from the one court that keeps capsizing.