**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 23, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2621-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF1220

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GARY AARON HUBER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Rock County: DERRICK A. GRUBB, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Gary Huber appeals a judgment of conviction and an order denying his postconviction motion to modify the criminal sentence,

raising challenges to his sentence. Huber argues that the circuit court erroneously exercised its discretion in sentencing him to a total of six years of initial confinement without sufficiently explaining its reasoning for doing so. Huber also argues that the court erroneously exercised its discretion by relying on two different kinds of allegedly inaccurate information. We conclude that Huber fails to carry his burden of showing that the court erroneously exercised its sentencing discretion with regard to either set of issues, and accordingly we affirm.

## BACKGROUND

¶2      In December 2021, the State filed ten charges against Huber: one count of first-degree sexual assault of a child; one count of repeated sexual assault of a child; three counts of child enticement; two counts of causing a child to view or listen to sexual activity; and three counts of causing a child to expose intimate parts. *See* WIS. STAT. §§ 948.02(1), 948.055(1), 948.07, 948.10(1) (2023-24).[1] The allegations identified four victims, who were all children at the time of the charged conduct.

¶3      Huber and the State reached a plea agreement under which he entered pleas of guilty to four charges: the two counts of causing a child to view or listen to sexual activity; and two of the three exposure counts. Pursuant to the agreement, the circuit court dismissed and read in the remaining six counts.

¶4      At the sentencing hearing, also pursuant to the plea agreement, the prosecution recommended a total sentence of two years of initial confinement. This was based on the prosecutor's recommendation that Huber serve the

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

following sentences concurrently: two years of initial confinement and three years of extended supervision for each of the counts of causing a child to view or listen to sexual activity; and one and a half years of initial confinement and one and a half years of extended supervision for each of the counts of causing a child to expose intimate parts. Huber recommended probation with a one-year period of confinement in county jail as a condition, preferably without an imposed and stayed prison sentence.

¶5 A presentence investigation report (PSI) prepared by the state department of corrections recommended consecutive sentences that would result in a total of seven years initial confinement. Huber filed an objection to one set of allegations in the PSI, namely, that Huber had provided drugs to some of the victims.

¶6 The defense provided the circuit court with a psychological evaluation of Huber by Dr. James Freiburger. Among other conclusions, this evaluation stated that Huber's "profile and history did not appear consistent with the profile of a sexual predator or pedophile" and that he "was at low risk for sexually offending or re-offending."

¶7 The circuit court imposed the following sentences: for each of the two viewing or listening to sexual activity counts, one and a half years of initial confinement, with three years of extended supervision; for each of the two exposure counts, one and a half years of initial confinement, with two years of extended supervision. The court determined that these sentences would each be

served consecutively to the others, with the result that Huber would serve six years of initial confinement and ten years of extended supervision.[2]

## DISCUSSION

¶8      This court reviews a challenged circuit court sentencing decision for an erroneous exercise of discretion. *State v. Bolstad*, 2021 WI App 81, ¶11, 399 Wis. 2d 815, 967 N.W.2d 164. The sentencing court must state on the record how it is applying appropriate sentencing standards in order to demonstrate that it properly exercised its discretion. *See id.*, ¶13.

### I.  Justification for a Six-Year Confinement Period

¶9      Huber argues that the circuit court failed to sufficiently explain the basis for its sentencing decisions in imposing a total confinement period of six years and not less than that, and in imposing consecutive, rather than concurrent, sentences. We begin our discussion by summarizing the court's explanation for the sentence. We then explain why we conclude that Huber fails to establish that the court did not adequately explain its decision.

¶10     The circuit court identified and discussed the "three primary factors" that courts should consider at sentencing, which it addressed in the following order: Huber's rehabilitative needs; the protection of the public; and the gravity of the offenses. *See Bolstad*, 399 Wis. 2d 815, ¶14. The court also noted other factors that it considered in arriving at its sentencing decision. *See State v. Dodson*, 2022 WI 5, ¶9, 400 Wis. 2d 313, 969 N.W.2d 225 (court may consider

---

[2] The court also ordered that Huber be added to the 15-year sex offender registry, although this ruling is not at issue in this appeal.

"[s]econdary factors" that include, for example, the "result of [the] presentence investigation").

¶11 Regarding rehabilitation, the circuit court concluded that Huber was not sufficiently taking responsibility for his actions and the harm that those actions caused to the victims, which reduced the likelihood that Huber could be rehabilitated. The court also appeared to conclude that the prospect of Huber's rehabilitation over the course of a relatively shorter sentence was unlikely, and that this weighed in favor of a relatively longer sentence.

¶12 The circuit court based these conclusions on the following findings. The PSI recommended that Huber undergo multiple types of rehabilitative programming, including sex offender treatment. The court interpreted the PSI to show that Huber believed that he did not have a need for rehabilitation. The court also observed that Huber told Dr. Freiburger that his criminal conduct was motivated by "curiosity" and that he was not aroused by, and did not derive sexual pleasure from, the offenses. In contrast, the court interpreted statements by the victims as showing that, in "[n]umerous incidents" of victimization, Huber seemed to have been motivated by more than mere curiosity. The court also noted the statement in the PSI that, when Huber learned he was being charged criminally, "he became emotional [because] he knew [that] he messed up and his life was going to change," because he would not be able to continue working in his field as a law enforcement officer and because "a whole lot of people were not going to speak with him." The court considered these statements, together with the absence of statements by Huber expressing concerns about the victims, to reflect a "selfish" attitude that elevated the importance of his self-created predicament over the injuries suffered by the victims.

¶13    The circuit court noted that Huber did not have a history of criminal convictions and that this counted in his favor.  At the same time, the court described in detail the extensive allegations against Huber that provided the basis for the four counts of conviction and the read-in charges.  This conduct weighed in favor of a more severe sentence.  Aggravating factors noted by the court included that the conduct stretched over the course of six years and that it consisted of a consistent pattern of conduct of a sexual nature directed at children.

¶14    Regarding the objective of protecting the community, the circuit court said that "the community as a whole may not need to be protected" from Huber, but that his own family did need protection, because he victimized young victims who are his relatives.  Some of this conduct took place "during family events and in locations" where the victims "should have believed that they were safe, but they weren't" due to Huber's actions.

¶15    Regarding the seriousness of the offense, the circuit court characterized the conduct as being very serious, and the court determined that this weighed in favor of a relatively more substantial sentence.  The court emphasized the young ages of the victims.  It also credited allegations in the PSI that Huber engaged in a process of "grooming" by introducing the victims to pornography and causing them to become "addicted" to drugs that included Vicodin, Tramadol, and Fentanyl.  The court also noted that, during the years that the conduct took place, Huber was in training to become a law enforcement officer, which gave him additional perspective on knowing "right from wrong."

¶16    The circuit court acknowledged the rule that courts imposing a criminal sentence are to consider probation as the first alternative when probation is available.  *See* *State v. Gallion*, 2004 WI 42, ¶25, 270 Wis. 2d 535, 678 N.W.2d

197. Consistent with this rule, the court determined that probation was inappropriate because Huber was "'in need of correctional treatment which can most effectively be provided if he is confined,'" and that probation "'would unduly depreciate the seriousness of the offense.'" *Id.* (quoting an American Bar Association standard adopted by our supreme court in an earlier opinion).

¶17 We conclude that the circuit court amply explained its basis for determining that a confinement period totaling six years, instead of a lesser sentence, was necessary in light of the pertinent sentencing standards applied to the facts here.

¶18 Huber concedes that the circuit court adequately explained its view that probation was not appropriate. But Huber asserts that the court did not explain why a six-year confinement period in particular was necessary under the circumstances. In particular, Huber contends that the court did not sufficiently explain the "linkage" between the relevant facts, sentencing objectives and factors, and the six-year duration of confinement.[3] Implied in Huber's argument is that the court was required to explicitly consider and reject lesser prison terms. But this is not the standard. Instead, the court was required to explain the reasons for the particular sentence that it imposed under pertinent sentencing standards. *See State v. Davis*, 2005 WI App 98, ¶26, 281 Wis. 2d 118, 698 N.W.2d 823 ("The court

---

[3] As context to Huber's reference to "linkage," we note that in *State v. Gallion*, 2004 WI 42, ¶46, 270 Wis. 2d 535, 678 N.W.2d 197, our supreme court explained:

> [The supreme court] require[s] that the [sentencing] court, by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives. By stating this linkage on the record, courts will produce sentences that can be more easily reviewed for a proper exercise of discretion.

must provide an explanation for the general range of the sentence imposed, not for the precise number of years chosen, and it need not explain why it did not impose a lesser sentence." (citing *Gallion*, 270 Wis. 2d 535, ¶¶49-50, 54-55)). The court gave a reasonably detailed account of its application of the relevant legal standards to the facts in the record, explaining why it imposed the six-year sentence.

¶19 Turning to the decision to impose consecutive sentences, Huber contends that the circuit court did not sufficiently explain why this was needed. He notes that in *State v. Hall*, 2002 WI App 108, ¶8, 255 Wis. 2d 662, 648 N.W.2d 41, this court stated that when a court sentences a defendant to consecutive sentences, it "must provide sufficient justification for such sentences and apply the same factors concerning the length of a sentence to its determination of whether sentences should be served concurrently or consecutively." In relying on *Hall*, Huber apparently means to suggest that here the court needed to go beyond its thorough discussion of pertinent sentencing objectives and factors and also explicitly explain why it was not imposing concurrent sentences. However, as the State notes, we have explained that this discussion in *Hall* "did not … establish a new procedural requirement at sentencing that the trial court state separately why it chose a consecutive rather than a concurrent sentence." *See State v. Berggren*, 2009 WI App 82, ¶45, 320 Wis. 2d 209, 769 N.W.2d 110. Instead, in *Hall*, we merely "emphasized the well-settled right of defendants to have the relevant and material factors influencing their sentences explained on the record." *Berggren*, 320 Wis. 2d 209, ¶45.

¶20 In his reply brief on appeal, Huber argues that this court's summary of *Hall* in *Berggren* "appears to directly conflict" with the reasoning in *Hall* itself. Huber notes that, in *Hall*, this court quoted an American Bar Association criminal sentencing standard, which stated that when "a court decides to impose sentences

consecutively, '[t]he imposition of consecutive sentences of total confinement … should be accompanied by a statement of reasons for the selection of consecutive terms.'" *Hall*, 255 Wis. 2d 662, ¶14 (quoting ABA Standards for Criminal Justice Sentencing, § 18-6.5(c)(ii) at 213 n.2 (3d ed. 1994)). Huber further notes that this court in *Hall* reversed the circuit court's sentence, observing at one point that the sentencing court "never explained why it imposed the sentences consecutively." *See id.*, ¶15.

¶21 We are not persuaded. We see no reason to disagree with *Berggren*'s analysis of *Hall*. The comment in *Hall* about how sentencing courts should explain decisions to impose consecutive sentences did not purport to establish a new procedural requirement. The *Hall* court did not state that it was adopting the pertinent ABA standard as a mandatory feature of Wisconsin's sentencing jurisprudence. *Cf. Gallion*, 270 Wis. 2d 535, ¶25 (noting that our supreme court had "expressly adopted" an ABA standard in an earlier case); *see also State v. Paske*, 163 Wis. 2d 52, 66, 471 N.W.2d 55 (1991) (explaining that our supreme court "has repeatedly refused to accept guidelines or limitations on consecutive sentencing" and gathering cases). Rather, the *Hall* court appears to have noted this ABA standard as a potential best practice that, had it been followed by the sentencing court in that case, could have gone a long way to avoid the need to reverse the circuit court for failing to "adequately explain[]" the total length of the exceptionally long sentence imposed in that case. *See Hall*, 255 Wis. 2d 662, ¶¶12-15. The sentencing court's failures included not addressing numerous seemingly relevant factors, and further, even when it did identify certain relevant factors, it failed to show how it applied them to the facts of the case. *See id.*, ¶¶15-17. In sum, the statement in *Hall* about what a sentencing court "should" state about choosing to impose consecutive sentences came in the context of a

sentence that was flawed in multiple respects. We have identified no such flaws here. Rather, we have already concluded that the circuit court here adequately explained its sentencing choices. The court's explanation of those sentencing choices embraced both the length of the sentence for each charge and whether those sentences would be served consecutively or concurrently.

## II. Inaccurate Information

¶22 Huber argues that the sentencing court relied on two different kinds of inaccurate information.

¶23 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Based on this right, a defendant is entitled to resentencing if the defendant can prove that the information at the original sentencing was inaccurate and that the court actually relied on the inaccurate information at sentencing. *State v. Travis*, 2013 WI 38, ¶21, 347 Wis. 2d 142, 832 N.W.2d 491. Whether a defendant has been sentenced in violation of the defendant's due process rights is an issue of law that this court reviews de novo. *State v. Coffee*, 2020 WI 1, ¶17, 389 Wis. 2d 627, 937 N.W.2d 579.

¶24 Huber's first argument is that the circuit court relied in part on allegations in the PSI that Huber provided drugs to several child victims, which he contends were inaccurate allegations.

¶25 His second argument is that the circuit court relied in part on what he contends was the inaccurate factual understanding that the PSI did not contain references to Huber "taking responsibility" for his actions.

¶26 In its response brief, the State makes supported arguments that Huber fails to show that the circuit court relied on any inaccurate information, and Huber fails to address the topic in his reply brief. Accordingly, we deem Huber to concede this issue. *See State v. Delebreau*, 2014 WI App 21, ¶14 n.3, 352 Wis. 2d 647, 843 N.W.2d 441 (failure in reply brief to address argument made in response brief may be considered a concession). In the interest of completeness, we briefly explain why we agree with the State on the merits under the pertinent legal standards.

¶27 Regarding the drug allegations, Huber relies on the fact that he filed with the circuit court a written objection denying these allegations in advance of the sentencing hearing. The court acknowledged the written objection at the hearing before proceeding to sentencing, and Huber asserts that he "reasonably expected that the court would not consider such information in fashioning its sentence."[4]

¶28 Huber's argument is undeveloped. He fails to explain why the circuit court was required to credit his written denial of the drug-related allegations. He may mean to argue that the court was obligated, on its own initiative, to conduct an evidentiary hearing regarding this disputed aspect of the PSI before it relied on it in deciding on a sentence. *See State v. Melton*, 2013 WI 65, ¶65, 349 Wis. 2d 48, 834 N.W.2d 345 ("'In the event the defendant wishes to contest any of the factual matters set forth in a PSI, the defendant is entitled to an

---

[4] On appeal, Huber states that, "[a]t sentencing, Huber again denied" allegations that he provided drugs to the victims or anyone else. This is not accurate. For this proposition, Huber cites to the portion of the sentencing hearing transcript reflecting that the court noted that Huber had filed a written objection before the hearing. At no point during the hearing did Huber or his attorney address the drug-related allegations.

evidentiary hearing where evidence regarding the issue in controversy may be presented by the State or the defendant.'" (quoted source omitted)). If this argument is intended, Huber forfeited the argument before and at the sentencing hearing by failing at any time to ask the court to resolve a disputed aspect of the PSI before proceeding to sentencing—even after both a victim and the prosecutor talked about the drug-related allegations at the hearing. *See id.*, ¶66 ("To secure a hearing the defendant should file a motion with the court (1) identifying specific problems with the PSI, and (2) requesting specific remedies to deal with those problems."). Instead, Huber merely filed a written denial of the allegations in the PSI and he did not even raise the topic during the hearing.

¶29 In the alternative, Huber might intend to argue that the circuit court credited his written denial, based on the fact that the court noted his objection, referring to it as "corrections propounded by the defendant." But this would not be a reasonable interpretation of how the court handled this issue. Instead, it is evident from the court's explanation of its sentencing rationale that it credited the allegations in the PSI, along with what the victim said at sentencing, that Huber had given drugs to victims. *See State v. Mosley*, 201 Wis. 2d 36, 45, 547 N.W.2d 806 (Ct. App. 1996) ("uncharged and unproven offenses may be considered by a sentencing court because they indicate whether the crime was an isolated act or a pattern of conduct"; "the court may consider hearsay" at sentencing "because the rules of evidence do not apply"). Huber does not attempt to show that the court's determination on this topic is not sufficiently supported by the record. Put differently, Huber does not meet his burden to show that the court relied on inaccurate information when it relied on the PSI and the victim statements.

¶30 Regarding the acceptance of responsibility issue, Huber specifically challenges the following remarks by the circuit court at sentencing:

> [Huber is] taking responsibility today, but … that's not unusual when a defendant comes for sentencing. But in the presentencing investigation, I didn't find that he was taking the responsibility that he tells me he is today.

In purported contrast to this statement by the court, Huber directs us to some of his own statements as reflected in the PSI. He argues that these parts of the PSI show that the court drew an inaccurate inference from the PSI. Specifically, Huber calls attention to the following statements he made to the author of the PSI. Huber told the author, "I am disappointed that I was careless, and that I caused harm to a family member. I wish I would have thought more about what I was putting them through, and the consequences of my actions." Huber also said that he "feels terrible about what happened," and that "[h]e has learned to think about other people and not just his wants before acting and to not be selfish." Huber said that he "believes" that his "offending behavior" "is serious" and that "what he did was wrong." Regarding the victims, Huber said that "he has no bad feelings toward [them], but knows they will never want to hear from him again."

¶31 Huber's argument depends on the assumption that the circuit court's conclusion that Huber failed to take sufficient responsibility for his crimes amounted to a finding that the PSI did not attribute to Huber any statement of personal responsibility. But this again is not a reasonable interpretation of the court's remarks. Rather, taking into account the court's reasoning in its entirety, it is clear that the court interpreted the PSI as a whole, and in the context of all other information before the court, as undermining the sincerity of the specific statements that Huber now quotes from the PSI. To illustrate, as noted above, the court emphasized other statements attributed to Huber in the PSI as demonstrating that Huber minimized the seriousness of, and his responsibility for, the offenses and the harm that they caused to the victims.

13

## CONCLUSION

¶32 For all of these reasons, we affirm the judgment of the circuit court and the order denying Huber's postconviction motion.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.