COURT OF APPEALS
DECISION
DATED AND FILED

May 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1823-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF3512

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GINA QUINTELLA JOHNSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN and MARK A. SANDERS, Judges. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Gina Quintella Johnson pleaded guilty to one count of homicide by negligent handling of a dangerous weapon and one count of second-degree recklessly endangering safety in connection with the shooting death of Markel Johnson.[1] The circuit court[2] imposed the maximum sentence for both counts and ordered that the sentences be served consecutive to one another. Johnson filed a postconviction motion requesting resentencing on two grounds: (1) the circuit court erroneously exercised its sentencing discretion because it did not adequately explain its reasons for imposing maximum, consecutive sentences; and (2) trial counsel was constitutionally ineffective because counsel recommended, without advising Johnson beforehand, a sentence of probation to the circuit court based on the recommendation of a presentence investigation report ("PSI") that was independently commissioned by trial counsel, only to subsequently characterize that recommendation as "absurd." The postconviction court denied Johnson's motion without conducting a *Machner*[3] hearing.

¶2 On appeal, Johnson renews her argument that the circuit court erroneously exercised its sentencing discretion, and she argues that she was entitled to a *Machner* hearing. We disagree and affirm.

---

[1] For ease of reading and to avoid confusion with the defendant, we refer to Markel Johnson as "Markel."

[2] The Honorable Stephanie Rothstein accepted Johnson's guilty plea and sentenced Johnson. We refer to Judge Rothstein as the circuit court. The Honorable Mark A. Sanders considered and denied Johnson's postconviction motion. We refer to Judge Sanders as the postconviction court.

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

# BACKGROUND

¶3 According to the criminal complaint, on August 4, 2019, citizens flagged down police on patrol near a bar in Milwaukee. When police arrived outside the bar, Markel was laying on the ground in a pool of blood. The citizens informed police that Markel had been shot. Life-saving measures were unsuccessful, and an autopsy revealed that Markel had suffered a stab wound to the left side of his chest and a gunshot wound to the right side of his mouth. The death was ruled a homicide.

¶4 A confidential witness ("C.W.") at the scene told police that they were at a bar across the street from the homicide location when they observed Johnson and Markel in an argument. Markel was "in [Johnson's] face," and C.W. and other patrons tried to break them up. Later, C.W. saw Johnson and Markel arguing by the bathroom, and C.W. told Markel that he should leave. C.W. then observed that Johnson had an open knife in her hand. The bar workers told Johnson and Markel that they both had to leave, and Johnson put the knife in her purse. As Johnson and Markel were leaving the bar, Johnson made a comment to Markel and approached Markel "in an aggressive manner." Markel then said to Johnson, "bitch you better back your ass up," and, "bitch, you only get one swing with that and then I'm gonna knock your ass out."

¶5 Later, C.W. left the bar and saw Johnson and Markel outside arguing. When a bar patron told them not to fight, Johnson told the patron to "shut the fuck up, you ain't got nothing to do with this, this is between me and him." Johnson and Markel then walked to Johnson's vehicle across the street. C.W. heard a yell and saw the two prepare to fight each other, while Johnson held her knife. C.W. saw Johnson make a swinging/stabbing motion, which Markel

3

attempted to dodge. After this, Markel punched Johnson. C.W. attempted to intervene, and at that point, Markel told C.W. that he had been stabbed. C.W. turned around and saw Johnson reach into her vehicle's storage compartment. Johnson pulled out a handgun and stated, "this is what you want?" C.W. said that they saw Johnson stand up on her "tippy toes" and fire two shots over the roof of the vehicle. Johnson then got into the vehicle and drove away.

¶6 Johnson later turned herself in to police and admitted to stabbing and shooting Markel. Johnson told police that Markel got aggressive and started punching her, so she stabbed him. Johnson said that after the fight, she reached down to pick up her phone, and she saw a firearm on the ground. Johnson claimed that she just wanted Markel to leave, so she fired the handgun as a warning.

¶7 Johnson pleaded guilty to two charges in an amended information: one count of homicide by negligent handling of a dangerous weapon and one count of second-degree recklessly endangering safety.[4] Prior to sentencing, Johnson filed an independently commissioned defense PSI. The author of the PSI opined that "[p]rison is not necessary to protect the public from further criminal activity[,]" and recommended that Johnson be "placed on probation for a total of three years to include 12 months conditional jail time with work-release if she can obtain employment or home confinement."

---

[4] Johnson was originally charged with one count of second-degree reckless homicide while using a dangerous weapon. This count was amended to a charge of first-degree reckless homicide while using a dangerous weapon, but pursuant to a plea agreement, the information was amended again to one count of homicide by negligent handling of a dangerous weapon and one count of second-degree recklessly endangering safety.

¶8    At the sentencing hearing, when trial counsel was discussing the sentencing factor of deterrence, counsel stated that the PSI author acknowledged in the report that the probation recommendation would likely be viewed as "absurd," but the author did not actually characterize the recommendation as "absurd" in the PSI. Counsel stated that "perhaps [probation] is absurd but I don't think it is relative to [Johnson's] character, relative to the facts and circumstances and what is exhibited in the letters that were filed with the [c]ourt from the family and in the PSI." After highlighting that Johnson turned herself in and confessed, which counsel described as "a very rare occurrence," counsel asked the court to "consider the defense recommendation, acknowledging that the punishment [Johnson]'s going to suffer will be life-long."

¶9    In imposing its sentence, and after classifying the severity of Johnson's crimes as "aggravated," the circuit court criticized trial counsel for submitting the defense-commissioned PSI recommending probation:

> I will tell you, [counsel], it's a defense decision to submit a [PSI] like this to the [c]ourt. And perhaps in this case to avoid having to characterize your own presentence, your own submission, your own suggestion as "absurd," you might have been better off just leaving the recommendation out[.]

The circuit court found that the PSI's recommendation of probation undermined the seriousness of the offense and was "unrealistic":

> It is the lawyers' responsibility to be realistic with your client and the [c]ourt. And, [counsel], this does not at all reflect on your abilities, on your level of preparedness. I understand what the goal was here and the goal was to show the [c]ourt Miss Johnson's character. However, the [c]ourt will tell you right out that to put this defendant on probation in this case would unduly depreciate the seriousness of this offense. It is a recommendation that is, in my book, totally unrealistic.

5

¶10    Counsel informed the court that Johnson was prepared to go to prison and was aware of the probation recommendation, but counsel was "not going to excise" the author's sentencing recommendation from the PSI for fear that doing so would be seen as "underhanded." The circuit court stated that the PSI author "has lost a degree of credibility with this [c]ourt by making the recommendation that she made. It's not a reflection on you, [counsel], certainly as I hope I made clear. But it is your filing."

¶11    The circuit court then recognized that Johnson accepted responsibility, but that it "is a mixed bag because she didn't turn in the firearm[,]" stating that "[i]t is my nightmare that that firearm will resurface and God forbid it becomes another murder gun." After highlighting inconsistencies between eyewitness testimony and Johnson's statements to police, the court found that Johnson exhibited disregard for human life:

> She says "she does not handle firearms and was not sure what to do. As she was moving the firearm to fire a warning shot in the air, it discharged."
>
> This is the essence of disregard for human life. Someone who admits that they don't know how to handle a gun picks up a gun and thinks they're gonna shoot it in the air just like in the movies. That is absurd. That is what leads to people being killed. That's what led to this gentleman being murdered.

The circuit court found "it's not a mitigating factor for somebody to come into court and say: I didn't know how to use a gun. So when it went off, I didn't know what to do."

¶12    The circuit court determined that the community "does need to be protected." It found that the effect upon the community has "been large," and that "[e]very weekend we are confronted with shootings of innocent people by those

6

who fire guns recklessly on our streets." Therefore, Johnson's "behavior did cause a significant risk to the community." The circuit court additionally found that "probation, as proposed by the expert submitted by the defense, is an unrealistic recommendation in this matter[.]" The circuit court imposed the maximum sentence for both counts and ordered that the sentences be served consecutively, resulting in a combined sentence of ten years of initial confinement followed by ten years of extended supervision.

¶13 Johnson moved for postconviction relief requesting resentencing because: (1) the circuit court erroneously exercised its sentencing discretion because it did not adequately explain its reasons for imposing maximum, consecutive sentences; and (2) she was denied the effective assistance of counsel because trial counsel recommended, and did not discuss with Johnson beforehand, a sentence of probation to the court and later admitted that the recommendation was "absurd." The postconviction court denied Johnson's motion. It determined that the circuit court "did not erroneously exercise its discretion and appropriately considered the relevant sentencing factors[.]" It added that "[t]he record *plainly* shows that [the circuit court] gave conscientious consideration to all of the relevant factors, and did so at some length." Additionally, the postconviction court concluded that Johnson was not prejudiced by trial counsel's allegedly deficient performance because, given the gravity of the offense and that "this was simply not a mitigated homicide," there is no reasonable probability that the circuit court "would have imposed anything less than the maximum penalty."

¶14 Johnson appeals.

## DISCUSSION

### I. The circuit court did not erroneously exercise its sentencing discretion.

¶15 Johnson argues that the circuit court erroneously exercised its sentencing discretion. Circuit courts retain considerable discretion at sentencing. *State v. Gallion*, 2004 WI 42, ¶68, 270 Wis. 2d 535, 678 N.W.2d 197. "[W]e will not disturb the exercise of the circuit court's sentencing discretion so long as 'it appears from the record that the court applied the proper legal standards to the facts before it, and through a process of reasoning, reached a result which a reasonable judge could reach.'" *State v. Cummings*, 2014 WI 88, ¶75, 357 Wis. 2d 1, 850 N.W.2d 915 (quoting *State v. Grindemann*, 2002 WI App 106, ¶30, 255 Wis. 2d 632, 648 N.W.2d 507).

¶16 Specifically, Johnson claims that the circuit court erroneously exercised its sentencing discretion because it did not adequately explain its reasons for imposing maximum, consecutive sentences. We disagree.

¶17 "Circuit courts are required to specify the objectives of the sentence on the record. These objectives include, but are not limited to, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." *Gallion*, 270 Wis. 2d 535, ¶40; *see also* WIS. STAT. § 973.017(10m)(a) (2023-24) ("The court shall state the reasons for its sentencing decision and ... shall do so in open court and on the record.").[5] There is an established framework for discharging this duty:

---

[5] All references to the Wisconsin Statutes are to the 2023-24 version.

> Courts are to identify the general objectives of greatest importance. These may vary from case to case. In some cases, punishment and protection of the community may be the dominant objectives. In others, rehabilitation of the defendant and victim restitution may be of greater import. Still others may have deterrence or a restorative justice approach as a primary objective.
>
> Courts are to describe the facts relevant to these objectives. Courts must explain, in light of the facts of the case, why the particular component parts of the sentence imposed advance the specified objectives.
>
> Courts must also identify the factors that were considered in arriving at the sentence and indicate how those factors fit the objectives and influence the decision.

*Gallion*, 270 Wis. 2d 535, ¶¶41-43.

¶18 "In each case, the sentence imposed shall 'call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant.'"[6] *Id.*, ¶44 (quoting *McCleary v. State*, 49 Wis. 2d 263, 276, 182 N.W.2d 512 (1971)). Importantly, however, the circuit court "must provide an explanation for the general range of the sentence imposed, not for the precise number of years chosen, and it need not explain why it did not impose a lesser sentence." *State v. Davis*, 2005 WI App 98, ¶26, 281 Wis. 2d 118, 698 N.W.2d 823.

¶19 First, we discuss the circuit court's explanation for imposing maximum sentences for both counts. We conclude that the circuit court

---

[6] Probation is required to be considered "as the first alternative" unless "confinement is necessary to protect the public, the offender needs correctional treatment available only in confinement, or it would unduly depreciate the seriousness of the offense." *State v. Gallion*, 2004 WI 42, ¶44, 270 Wis. 2d 535, 678 N.W.2d 197. Johnson does not challenge the adequacy of the circuit court's explanation for not imposing probation and instead imposing confinement.

adequately explained the general range of the sentence imposed.[7]  As set forth above, the circuit court repeatedly emphasized the need to protect the community from Johnson's recklessness and to deter others, specifically observing that although Johnson turned herself in, she did not turn in the firearm, and that the community was regularly confronted with shootings of innocent people by those who fire guns recklessly.  The circuit court highlighted the multiple inconsistencies between Johnson's statements to police and those of other witnesses.  Moreover, the circuit court underscored just how reckless Johnson's explanation of the shooting really was: "Someone who admits that they don't know how to handle a gun picks up a gun and thinks they're gonna shoot it in the air just like in the movies.  That is absurd.  That is what leads to people being killed."

¶20    The circuit court also considered factors in Johnson's favor, including that she was a prosocial member of the community, was employed, and appeared to be a responsible parent, but the circuit court ultimately found that these considerations could not overshadow the gravity of the offense and the need to both punish the defendant and protect the public.  Johnson is simply unhappy that the circuit court weighed certain factors more heavily against her while not assigning enough weight to mitigating factors.  *See* *State v. Berggren*, 2009 WI

---

[7] Johnson argues that the circuit court did not explain the general range of the sentence imposed because it did not indicate "that a short, medium, or long period of incarceration was required."  Johnson also argues that the circuit court was required to state specifically why maximum, consecutive sentences were the minimum amounts of confinement consistent with the circuit court's sentencing objectives.  We reject these arguments.  It is well settled that the framework for explaining a sentence "is not intended to be a semantic trap for circuit courts," nor is it a requirement that "magic words" be used.  *Gallion*, 270 Wis. 2d 535, ¶49.  As we explain throughout this opinion, the sentencing transcript demonstrates that the circuit court provided an adequate explanation for the sentence imposed.

App 82, ¶46, 320 Wis. 2d 209, 769 N.W.2d 110; *State v. Prineas*, 2009 WI App 28, ¶34, 316 Wis. 2d 414, 766 N.W.2d 206. "[T]he circuit court has 'wide discretion in determining what factors are relevant' and what weight to give to each factor." *State v. Williams*, 2018 WI 59, ¶47, 381 Wis. 2d 661, 912 N.W.2d 373 (quoting *Gallion*, 270 Wis. 2d 535, ¶68). We are satisfied that the circuit court adequately explained why it imposed the maximum sentences for both counts.

¶21 Second, we discuss the circuit court's explanation for imposing consecutive sentences. At the outset, we note that circuit courts are not required to separately explain why they "chose a consecutive rather than a concurrent sentence." *Berggren*, 320 Wis. 2d 209, ¶45. Instead, courts must explain "the relevant and material factors" that influenced the sentencing decision. *Id.* The same factors considered in determining the length of a sentence are used to determine whether sentences should be served concurrently or consecutively. *State v. Hall*, 2002 WI App 108, ¶8, 255 Wis. 2d 662, 648 N.W.2d 41.

¶22 Here, the circuit court stated that it found that the "incidents are sufficiently distinct to merit consecutive sentences." We agree with the circuit court's assessment, and we conclude that the court adequately explained why it imposed consecutive sentences. In addition to all of the details described above concerning the gravity of the offense and the need to protect the public, the circuit court emphasized the separate and distinct impacts on the community of both Markel's homicide (i.e., count one: homicide by negligent handling of a dangerous weapon) and the dangers posed to innocent people by those who fire guns recklessly (i.e., count two: second-degree recklessly endangering safety). "That logic is unassailable under the facts of this case." *State v. Ziegler*, 2006 WI App 49, ¶35, 289 Wis. 2d 594, 712 N.W.2d 76. These separate and distinct concerns

11

coupled with the circuit court's thorough consideration of the *Gallion* factors adequately explain the imposition of consecutive sentences.

¶23     Accordingly, we conclude that the circuit court did not erroneously exercise its sentencing discretion.

## II.     Johnson is not entitled to a *Machner* hearing.

¶24     Johnson argues that she was denied the effective assistance of counsel because trial counsel recommended, and did not discuss with Johnson beforehand, a sentence of probation to the circuit court based upon counsel's independently commissioned PSI, and later admitted that the recommendation was "absurd."  Johnson asserts that, had she been informed of trial counsel's probation recommendation, she would have instructed trial counsel to instead advocate for a prison term between four and seven years.  Had trial counsel recommended a prison term within this range, Johnson says, there is a reasonable probability that the circuit court would not have harbored the same negative attitudes towards the defense and would not have imposed maximum, consecutive sentences for both offenses.  We disagree with Johnson, and instead, we agree with the postconviction court that Johnson is not entitled to a *Machner* hearing on these claims.

¶25     In rejecting Johnson's ineffective assistance challenges without a hearing, the postconviction court applied the two-pronged test for deficient performance and prejudice established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "When a circuit court summarily denies a postconviction motion alleging ineffective assistance of counsel without holding a *Machner* hearing, the issue for the court of appeals ... is whether the defendant's motion alleged sufficient facts entitling [the defendant] to a hearing."  *State v. Sholar*, 2018 WI

53, ¶51, 381 Wis. 2d 560, 912 N.W.2d 89. Even if the motion alleges specific facts, "an evidentiary hearing is not mandatory if a defendant's motion presents only conclusory allegations or if the record as a whole conclusively demonstrates that the defendant is not entitled to relief." *State v. Ruffin*, 2022 WI 34, ¶38, 401 Wis. 2d 619, 974 N.W.2d 432.[8]

¶26 To establish deficient performance, the motion must specifically allege more than that counsel's performance was "imperfect or less than ideal." *State v. Balliette*, 2011 WI 79, ¶22, 336 Wis. 2d 358, 805 N.W.2d 334. There is a strong presumption that counsel performed reasonably, and the question is "whether the attorney's performance was reasonably effective considering all the circumstances." *Id.*, ¶¶22, 25-28.

¶27 The motion must also allege prejudice, i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In order to satisfy this prong, the defendant must allege more than "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "[R]ank speculation" is insufficient. *State v. Erickson*, 227 Wis. 2d 758, 774, 596 N.W.2d 749 (1999).

---

[8] The State asserts, without development, that Johnson was required to provide an affidavit with her postconviction motion describing what her testimony would be if a *Machner* hearing was held. We know of no such requirement, and the State provides no authority to support it. "Arguments unsupported by references to legal authority will not be considered." *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633.

¶28 Whether a postconviction motion is sufficient on its face to require an evidentiary hearing and whether the record conclusively demonstrates that the defendant is not entitled to relief are both questions of law that we review independently of the circuit court. *Ruffin*, 401 Wis. 2d 619, ¶27; *Balliette*, 336 Wis. 2d 358, ¶18. Furthermore, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

¶29 In this case, the record conclusively demonstrates that Johnson was not prejudiced by trial counsel's alleged deficiencies. There is no reasonable probability that the circuit court would have imposed a lesser sentence or followed a recommendation of four to seven years in prison. We agree with the postconviction court that, although the circuit court was "clearly not impressed with counsel's recommendation of probation in a homicide case," there is no support for the conclusion that the circuit court "harbored any resentment against [Johnson] for this, particularly in light of the fact that counsel clarified that [Johnson] was 'prepared to go to prison.'" We agree with the postconviction court's characterization of the circuit court's comments "as constructive criticism or judicial guidance," and there is "no connection between defense counsel's performance and [the circuit court]'s decision to impose a maximum sentence." Moreover, criticism aside, the circuit court understood that trial counsel's tactic was to present favorable evidence of Johnson's character in order to argue that Johnson's extraordinary character justified an extraordinarily lenient sentence.

¶30 As detailed above, the reasons why the circuit court imposed maximum, consecutive sentences was thoroughly explained and supported by the record. The circuit court repeatedly emphasized the need to protect the community from Johnson's recklessness and to deter others. It highlighted

multiple inconsistencies between Johnson's statements to police and those of other witnesses. It also considered factors in Johnson's favor, but it ultimately found that these considerations could not overshadow the gravity of the offense and the need to both punish the defendant and protect the public. There is no indication that the circuit court would have weighed the sentence factors any differently had trial counsel instead recommended a four-to-seven-year prison sentence instead of probation.

¶31     In our view, the record conclusively demonstrates that the circuit court was convinced that the minimum amount of confinement necessary to accomplish its stated sentencing objectives was the sentence it imposed. There is no reasonable probability that the circuit court would have sentenced Johnson any differently had trial counsel instead recommended a four-to-seven-year prison term. Accordingly, Johnson was not entitled to a *Machner* hearing on her ineffective assistance of counsel claims.

## CONCLUSION

¶32     We conclude that the circuit court did not erroneously exercise its sentencing discretion. It adequately explained the sentence imposed. We further conclude that Johnson is not entitled to a *Machner* hearing on her ineffective assistance of counsel claims. The record conclusively demonstrates that Johnson was not prejudiced by trial counsel's allegedly deficient performance.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

15